**E. B. MICHAELS and Ralph Michaels, as Agents and Trustees for Evra Corporation, Plaintiffs,**

v.

**MUTUAL MARINE OFFICE, INC. and American Manufacturers Mutual Insurance Co., Defendants.**

No. 78 Civ. 1911.

United States District Court, S. D. New York.

June 4, 1979.

Hill, Betts & Nash, New York City, for plaintiffs; Francis H. McNamara, Robert B. Fougner, New York City, of counsel.

Bigham, Englar, Jones & Houston, New York City, for defendants; Julian S. Gravely, Jr., William G. Tormey, New York City, of counsel.

## OPINION

EDWARD WEINFELD, District Judge.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

Plaintiffs, the successors in interest of an assured in whose favor the defendants issued a charterer's liability insurance policy, seek to recover from them indemnity for damages caused to a vessel during the course of unloading cargo and which they paid to the shipowner following a contested arbitration proceeding. The basic facts are not in dispute; indeed, they have been stipulated in the pretrial order. What is in dispute is whether the claim asserted by plaintiffs is covered by the terms of the policy.

Under the policy the defendants agreed to indemnify the assured for all sums which, as the charterer of the vessel, it would be obligated to pay under the charter party, as well as legal costs and expenses occasioned by the defense of any claim against it for liability covered by the terms of the policy. The insurance contract also provides:

> Warranted free from claim (including legal expenses and cost of defense) unless amounting to $10,000 and then *only to*

*pay hereunder the excess of $10,000 any one loss, accident or disaster.*[1]

The vessel aboard which the damage occurred had a cargo of heavy steel scrap that was unloaded at Birkenhead, England. The cargo was discharged between June 30 and July 8, 1970 by means of "petal" grab buckets, that are multi-planed with tapered claws. The grab buckets were dropped with such force on the unprotected tank tops of the discharging vessel that they inflicted at least 200 holes or dents in the tank tops or floors of the four cargo holds. It is undisputed that the plaintiffs' predecessor in interest, the charterer, was responsible for any resulting damages to the owner of the vessel. Subsequently, in an arbitration proceeding initiated by the shipowner, the charterer was held liable for the damages to the shipowner, which, together with other items, plaintiffs seek to recover under the policy.

The plaintiffs contend that the damages paid to the shipowner and the expenses incurred in connection therewith were the result of a single operation—unloading of the cargo—and constituted only "one loss, accident or disaster," subject to a single deduction of $10,000. The defendants, contrariwise, contend that each dropping of the grab bucket was a separate act of negligence resulting in separate accidents and accordingly that in each instance the $10,000 deduction is applicable, and since no single dropping of the grab bucket resulted in damage in excess of $10,000, they are not liable under their contract of insurance.

The parties are in accord that New York law governs.[2] New York cases hold that where a policy of insurance is written in such a manner as to be doubtful or uncertain in meaning, all ambiguities are to be resolved against the insurer and in favor of the policyholder.[3] The defendants do not dispute this rule but assert that the language of the policy is clear and that there was "more than one event, occurrence or accident. The grab buckets were dropped repeatedly and intentionally over a period of time—9 days. Each damage was caused by a separate impact. Each damage was a separate contact."[4] Thus the basic issue is whether it is clear and unambiguous that each of the 200 dents and holes is a separate "loss, accident or disaster" under the deductible section of the contract, as defendants contend, or whether the clause may reasonably be construed so that all the 200 holes and dents constitute "one loss, accident or disaster," as plaintiffs contend. The contract of insurance does not define the terms. Thus we turn to New York cases for direction in resolving the issue.

At first blush, some of the New York cases seemingly give support to defendants' position by defining "accident" in a strict and technical manner.[5] However, the New York Court of Appeals, after considering three alternative concepts, adopted a func-

1. Exh. 2 (Endorsement # 1, at 2) (emphasis added).

2. *See Wilburn Boat Co. v. Fireman's Ins. Co.,* 348 U.S. 310, 316–21, 75 S.Ct. 368, 99 L.Ed. 337 (1955) (interpretation of marine insurance contracts is governed by state law unless a well-established federal admiralty rule is applicable); *Ahmed v. American S. S. Owners Mut. Protective & Indem. Ass'n,* 444 F.Supp. 569 (N.D.Cal. 1978) (applying New York law to interpret marine insurance contract); *Navegacion Goya, S. A. V. Mutual Boiler & Mach. Ins. Co.,* 411 F.Supp. 929, 934 & n. 7 (S.D.N.Y.1975) (same).

3. *American Home Assurance Co. v. Port Auth. of N.Y. & N.J.,* 66 A.D.2d 269, 412 N.Y.S.2d 605, 609 (1st Dep't 1979); *see Thomas J. Lipton, Inc. v. Liberty Mut. Ins. Co.,* 34 N.Y.2d 356, 357 N.Y.S.2d 705, 314 N.E.2d 37 (1974); *Sincoff v. Liberty Mut. Fire Ins. Co.,* 11 N.Y.2d 386, 230 N.Y.S.2d 13, 183 N.E.2d 899 (1962); *Hartol Prods. Corp. v. Prudential Ins. Co.,* 290 N.Y. 44, 47 N.E.2d 687 (1943); *Marine Midland Servs. Corp. v. Samuel Kosoff & Sons, Inc.,* 60 A.D.2d 767, 400 N.Y.S.2d 959 (4th Dep't 1977).

4. Defendants' Trial Memorandum, at 3.

5. *Hartford Accid. & Indem. Co. v. Wesolowski,* 39 A.D.2d 833, 333 N.Y.S.2d 289 (4th Dep't 1972), *rev'd,* 33 N.Y.2d 169, 350 N.Y.S.2d 895, 305 N.E.2d 907 (1973) (events are separate "accidents" if they are distinguishable in time and space and one event does not cause the other); *Rosalia v. Hartford Accid. & Indem. Co.,* 48 Misc.2d 862, 266 N.Y.S.2d 3 (Sup.Ct.1965) (accident is "sudden and instant," an event of the moment rather than a condition changing over time).

tional approach that is protective of the reasonable expectations of insureds: There is one accident if there has been but one single " 'event of an unfortunate character that takes place without one's foresight or expectation,' . . . [t]hat is, an unexpected, unfortunate occurrence." [6] Such an approach has been approved as the most practical by the Court of Appeals "because it corresponds most with what the average person anticipates when he buys insurance and reads the 'accident' limitation in the policy"; [7] moreover, it is consistent with the principle that courts should construe insurance policies as would the ordinary man in the street when he purchases and pays for insurance,[8] or, phrased somewhat differently, according to "the reasonable expectation and purpose of the ordinary business man when making an ordinary business contract." [9] Accordingly, the issue presented to the Court is whether a purchaser of insurance might reasonably and naturally have expected that damage done to a ship's deck by repetitive grab bucket contacts during the unloading would constitute a single insurable event or occurrence under the policy.

Experience suggests that it was not unreasonable for the charterer as the assured under the marine policy of insurance to assume that it was covered for any damage it was called upon to pay to the shipowner or others resulting from and during the course of loading or unloading the ship's cargo. Here the unloading of the heavy steel scrap obviously could not have been accomplished in a single lifting. The cargo was such that continuous liftings over a period of time, in this instance days, were required to complete the discharge. Unloading the cargo was a unified and continuous function until completion. The "event" or "occurrence" was thus a continuous process which extended over a period of days; the "accident" [10] was the repetitive use of the hoisting machinery that damaged the tank tops of the ship during unloading; the "single loss" was the total charge for repairs. The same negligent act—the constant use of the grab buckets during the continuous process of unloading—was the proximate cause of all the damage. In the arbitration proceeding, the shipowner and charterer appear to have treated the unloading as a single cause of damage. If it had been the purpose of the insurer to treat each lifting of a portion of the total cargo as a separate operation and a separate insurable occurrence, in the event of damage, then its duty was to express that purpose with precise language in the policy.[11] New

---

**6.** *Arthur A. Johnson Corp. v. Indemnity Ins. Co.*, 7 N.Y.2d 222, 228, 196 N.Y.S.2d 678, 683, 164 N.E.2d 704, 707 (1959) (quoting *Croshier v. Levitt*, 5 N.Y.2d 259, 269, 184 N.Y.S.2d 321, 328, 157 N.E.2d 486, 491 (1959) ); *see Hartford Accid. & Indem. Co. v. Wesolowski*, 33 N.Y.2d 169, 173, 350 N.Y.S.2d 895, 899, 305 N.E.2d 907, 910 (1973) (quoting *Johnson Corp.*).

**7.** *Arthur A. Johnson Corp. v. Indemnity Ins. Co.*, 7 N.Y.2d 222, 229, 196 N.Y.S.2d 678, 684, 164 N.E.2d 704, 708 (1959) (quoted in *Hartford Accid. & Indem. Co. v. Wesolowski*, 33 N.Y.2d 169, 173, 350 N.Y.S.2d 895, 899, 305 N.E.2d 907, 910 (1973)); *see State Farm Mut. Automobile Ins. Co. v. Bush* 46 A.D.2d 958, 362 N.Y.S.2d 220 (3d Dep't 1974) (citing cases).

**8.** *Johnson v. Travelers Ins. Co.*, 269 N.Y. 401, 199 N.E. 637 (1936); *Abrams v. Great American Ins. Co.*, 269 N.Y. 90, 199 N.E. 15 (1935).

**9.** *Bird v. St. Paul Fire & Marine Ins. Co.*, 224 N.Y. 47, 51, 120 N.E. 86, 87 (1918).

**10.** The words "accident" and "occurrence" are deemed synonymous under New York law. So too "event" has been equated with "occurrence." *Hartford Accid. & Indem. Co. v. Wesolowski*, 33 N.Y.2d 169, 172–73 & n. 1, 350 N.Y.S.2d 895, 898–99 & n. 1, 305 N.E.2d 907, 909–910 (1973).

**11.** *Birnbaum v. Jamestown Mut. Ins. Co.*, 298 N.Y. 305, 313, 83 N.E.2d 128, 132 (1948) ("If the defendant intended to limit its liability as drastically as it now claims it did, it should have done a more workmanlike job . . . drawn in such 'clear and unmistakable terms, so that no one could [may] be misled.' ") (quoted in *American Home Assurance Co. v. Port Auth. of N.Y. & N.J.*, 66 A.D.2d 269, 412 N.Y.S.2d 605, 610 (1st Dep't 1979)).

Parenthetically, it is noted that the contentions of the parties are in reverse of those usually adopted by an insured and an insurer—no doubt fashioned by the $10,000 deductibility clause and its impact upon each. *Cf. Champion Int'l Corp. v. Continental Cas. Co.*, 546 F.2d 502, 508 (2d Cir. 1976) (Newman, J., dissenting), *cert. denied*, 434 U.S. 819, 98 S.Ct. 59, 54 L.Ed.2d 75 (1977). The fact that, as in this

York law supports the view that the series of continuous and interrelated actions directed toward lifting the cargo out of the ship was an "event of unfortunate character that takes place without foresight or expectation; a single unexpected unfortunate occurrence." [12]

To be sure, defendants' interpretation is not without support, particularly in light of the fact that the contract of insurance once contained a clause providing that "the deductible shall apply separately to each loading and unloading instead of any other loss, accident or disaster." [13] But again it is not clear whether "loading and unloading" referred to the totality of the cargo or its component parts as each was lifted in the process of unloading. And no probative evidence has been presented indicating the parties' intentions with respect to the change or the circumstances surrounding the deletion of that clause. Indeed, plaintiffs do not dispute that defendants' interpretation of a separate and independent accident may have some validity, but they urge that their interpretation is at least as reasonable and that the issue must be resolved in their favor not only because of the ambiguity but also because their interpretation more nearly reflects what the average person would anticipate upon reading the terms of the policy. The Court is satisfied that although "[t]he interpretation urged by the plaintiff may not be the only reasonable interpretation . . . it is a reasonable one," which is "all plaintiff is required to prove" under New York law. [14] Accordingly plaintiff is entitled to indemnity under the insurance.

■ With respect to damages, defendants concede that plaintiffs are entitled to $78,990.06, a portion of the award in favor of the shipowner under the arbitration, [15] but resist payment of counsel fees incurred in connection with the arbitration. Under the policy, the assured is entitled to indemnity for legal fees and expenses, provided they "are incurred with the prior written consent of [the insurance] Company." The defendants assert without contradiction they never gave such written consent. However, the evidence establishes that from the time plaintiffs first claimed entitlement to indemnity the defendants disavowed any liability upon the very grounds here advanced. Apart from this disavowal, they declined plaintiffs' invitation to participate in the arbitration and to assume the defense of the matter. Accordingly, plaintiffs contend that the defendants breached their duty to defend and, as plaintiffs notified the defendants, they were "entitled to proceed as a prudent uninsured." [16] They then incurred legal expenses first in attempting to settle the shipowner's claim

instance, experienced parties can so readily shift their positions, not only emphasizes its ambiguity but underscores the need for a clear expression in the policy of what the clause does or does not cover.

12. *See Champion Int'l Corp. v. Continental Cas. Co.*, 546 F.2d 502 (2d Cir. 1976), *cert. denied*, 434 U.S. 819, 98 S.Ct. 59, 54 L.Ed.2d 75 (1977) ("occurrence" in deductible provision could be interpreted to include 1400 different defective installations where underlying circumstances were same); *McGroarty v. Great Am. Ins. Co.*, 36 N.Y.2d 358, 368 N.Y.S.2d 485, 329 N.E.2d 172 (1975) (damage caused by continuing excavation over period of months construed to be "an accident"); *Marine Midland Servs. Corp. v. Samuel Kosoff & Sons, Inc.*, 60 A.D.2d 767, 400 N.Y.S.2d 959 (4th Dep't 1977) (process of defective repairing of roof may be single "occurrence" covered by liability insurance policy).

13. The deleted provision is quoted in Exh. A.

14. *Champion Int'l Corp. v. Continental Cas. Co.*, 400 F.Supp. 978, 981 (S.D.N.Y.1975), *aff'd*, 546 F.2d 502 (2d Cir. 1976), *cert. denied*, 434 U.S. 819; 98 S.Ct. 59, 54 L.Ed.2d 75 (1977).

15. The total award was $88,542.48; however, plaintiffs concede that of this sum they are not entitled to receive $9,552.42.

16. Exh. 13; *see International Paper Co. v. Continental Cas. Co.*, 35 N.Y.2d 322, 326, 361 N.Y.S.2d 873, 877, 320 N.E.2d 619, 621 (1974) ("An insurer's obligation to furnish its insured with a defense is heavy indeed, and, of course, broader than its duty to pay."); *Goldberg v. Lumber Mut. Cas. Ins. Co. of N.Y.*, 297 N.Y. 148, 154, 77 N.E.2d 131, 133 (1948) (same; insurer is liable for reasonable counsel fees and necessary expenses incurred in defending main action).

and later in resisting it in the arbitration. The complete disavowal of liability by defendants and their refusal to participate in the arbitration proceeding, which clearly could have been without prejudice to defendants' denial of liability, justified plaintiffs in engaging counsel without the defendants' consent. If anything, their services in resisting the shipowner's claims served to reduce or to limit, to the extent possible, the award to the shipowner. Accordingly, plaintiffs are also entitled to recover their counsel fees and costs in the sum of $23,807.48, which the trial testimony establishes were necessarily required in meeting the shipowner's contentions and are fair and reasonable. In sum, the damage award is as follows:

| | |
|---|---|
| Portion of award in favor of the shipowner under the arbitration: | $ 78,990.06 |
| Plaintiffs' share of arbitrators' fees: | 2,275.00 |
| Legal fees and costs: | 23,807.48 |
| Subtotal | $105,072.54 |
| Less deductible | 10,000.00 |
| Total | $ 95,072.54 |

Plaintiffs' further claim in the sum of $10,095.57 for loss of hire and expenses incurred in performing temporary repairs at Birkenhead is disallowed for failure of proof.[17]

The foregoing shall constitute the Court's Findings of Fact and Conclusions of Law.

Judgment may be entered accordingly.

---

17. Defendant contends that the costs incurred to make the temporary repairs were not necessary losses on the ground that charterer was not obligated to make the repairs under the charter party, while plaintiffs argue that the temporary repairs were practically necessary in order to mitigate damages. Plaintiffs, however, have put forth no evidence to prove their contention, and the fact that the arbitrators disallowed the claim undermines their position.