728 P.2d 780

**UNIGARD INSURANCE COMPANY, Plaintiff-Appellant,**

v.

**UNITED STATES FIDELITY AND GUARANTY COMPANY, a foreign corporation; Joe Campbell, d/b/a Campbell Construction Company, and W.A.D. Company, Defendants-Respondents.**

No. 16379.

Court of Appeals of Idaho.

Dec. 2, 1986.

John A. Bailey, Jr. (Racine, Olson, Nye, Cooper & Budge) Pocatello, for plaintiff-appellant.

David H. Maguire (Maguire, Ward, Maguire & Bybee), Pocatello, for defendants-respondents.

BURNETT, Judge.

This is a dispute over insurance coverage. The principal issue is one of first impression in Idaho. We are asked to decide whether multiple incidents of damage, produced by a closely related series of repetitive events, constitute a single "occurrence" within the meaning of a liability insurance policy. The district court answered this question in the affirmative. For reasons explained below, we agree.

I

The facts essential to our opinion are undisputed. Sawtooth Storage is a "mini-storage" rental facility in Pocatello. Storage spaces are housed in rows of buildings with individual overhead doors for each space. One winter evening Campbell Construction Company performed snow clearing services on Sawtooth's property. Campbell's employee used a tractor with a blade to move the snow. Unfortunately, the employee damaged ninety-eight doors during a four-hour period.

Campbell admitted liability for the damage. He referred Sawtooth's claim to his insurer, Unigard Insurance Company ("Unigard"). However, Unigard denied coverage. In a letter to Campbell, the company stated it considered every damaged door to be the result of a separate "occurrence" under the policy. Because the policy contained a $500 deductible, and because the damage to each door was less than this amount, Unigard refused to pay the Sawtooth claim.

Sawtooth then submitted the claim to its own insurer, the United States Fidelity & Guaranty Company ("USF & G"). USF & G paid the claim and filed a subrogation action against Campbell. Unigard then filed the instant lawsuit, seeking a declaratory judgment to determine that it would not be legally obligated to indemnify Campbell. The subrogation action was suspended during the pendency of the instant case. On cross-motions for summary judgment, the district court held that all damage to the doors arose from a single occurrence. The court declared that Campbell was re-

quired to pay only one deductible and that Unigard was obligated to pay the remainder of Sawtooth's claim. In addition, the court awarded attorney fees to Campbell pursuant to I.C. § 41–1839. Unigard has appealed.

## II

It is difficult to draw an abstract line separating single and multiple occurrences. For this reason, perhaps, many insurance policies—including the one at issue here—contain no definition of "occurrence" or "accident" that addresses the issue. The cases tend to revolve around specific fact patterns. The courts have directed attention to the relationship among the acts causing injury and to the temporal and spatial proximity of the injuries themselves. Three methodologies have emerged. The earliest, but now largely discredited, approach equates the number of parties suffering bodily injury or property damage with the number of accidents or occurrences.[1] This has since been labeled the "result" or "effect" approach. Other courts have used a "proximate cause" or "causation" approach. It treats all damage or injuries within the scope of a single proximate cause as arising from one accident or occurrence.[2] The most recent formulation, and the approach that we find most useful for cases of the present type, has been termed the "functional event" or "continuous process" test. It focuses not upon the individual events of damage but upon the underlying cause. The critical inquiry is whether or not the damage-causing process was continuous and repetitive. *See, e.g., Champion International Corp. v. Continental Casualty Co.,* 546 F.2d 502 (2nd Cir.1976); *E.B. Michaels v. Mutual Marine Office, Inc.,* 472 F.Supp. 26 (S.D.N.Y.1979).

As noted in *Champion International,* the continuous process approach best reflects an insured's reasonable expectation of coverage. That is, a lay person is likely to view the harm caused by a single, continuous process as one "occurrence." *See generally* R. KEETON, INSURANCE LAW—BASIC TEXT § 2.11(c) (1971). However, counsel for Unigard has cautioned that insureds may be quick to embrace a continuous process approach when the aggregate damage is within policy limits, but they may resist such an approach if it causes policy limits to be exceeded. We acknowledge this possibility. If counsel's underlying point is that any standard for determining the number of occurrences must be applied consistently, we agree. A determination of the number of occurrences cannot be result-oriented. It must rest on a principled analysis that is not predisposed to favor insureds or insurers. We think the continuous process test satisfies this criterion.[3]

---

1. *See South Staffordshire Tramways Company, Ltd. v. Sickness and Accident Assurance Association, Ltd.,* 1 Q.B. 402 (1891, C.A.). In that case, a tram tipped, injuring forty people. The Court of Appeal of England held that the meaning of the term "accident" in the disputed policy was to be interpreted from the point of view of the injured party. Though there had been only one negligent act, forty persons were injured. Therefore, the court found forty accidents. The insurer was obligated to reimburse the insured for the total amount of damages under the policy's annual aggregate coverage provision, rather than having to reimburse only up to the policy's one-accident limit (which was well below the injured parties' damages).

2. *See Barrett v. Iowa National Mutual Insurance Co.,* 264 F.2d 224 (9th Cir.1959) (fire which destroys property of seven tenants is one accident); *Allied Grand Doll Mfg. Co. v. Globe Indemnity Co.,* 15 A.D.2d 901, 225 N.Y.S.2d 595 (1962) (leaky faucet causing damage to seven apartments below is one accident); *Truck Insurance Exchange v. Rohde,* 49 Wash.2d 465, 303 P.2d 659 (1956) (collisions between a car and three motorcycles in rapid succession constitute one accident).

3. In general, we note that courts confronted with the question of single or multiple occurrences, where a single occurrence will exceed policy limits, have gone both ways. There is no pattern depicting bias against insurers. *See, e.g., Maurice Pincoffs Co. v. St. Paul Fire and Marine Insurance Co.,* 447 F.2d 204 (5th Cir. 1971); *Liberty Mutual Insurance Co. v. Rawls,* 404 F.2d 880 (5th Cir.1968); *Southern International Corp. v. Poly-Urethane Industries, Inc.,* 353 So.2d 646 (Fla.Dist.Ct.App.1977); *St. Paul Fire and Marine Insurance Co. v. Hawaiian Insurance and Guaranty Co.,* 2 Hawaii App. 595, 637

■ We recognize, of course, that neither the continuous process approach nor any other approach derived from case law should be applied if the insurance policy itself contains a dispositive definition of "occurrence" or "accident." As mentioned earlier, the policy in this case does not contain such a definition. It does offer the insured a choice between deductibles based on "claims" and deductibles based on "occurrences." [4] Although Campbell chose to pay deductibles on a "per claim" basis, the choice was immaterial because under either option, there could be only one deductible if only one person or organization suffered property damage caused by a single occurrence. In this case only one organization, Sawtooth Storage, suffered damage.

■ The question remains whether the damage was caused by a single occurrence. We hold that it was. The cause of damage—the negligence of Campbell's employee—was continuous and repetitive. He inflicted ninety-eight similar injuries during the four-hour course of a snow-clearing activity. Under the continuous process test, there was but one "occurrence." Campbell was responsible for only one deductible.

Our conclusion is consistent with results reached by other courts, applying various analytical approaches to similar fact patterns. In *Haerens v. Commercial Casualty Insurance Co.*, 130 Cal.App.2d Supp. 892, 279 P.2d 211 (1955), the insured contracted to paint a house. The insured's employees negligently damaged several windows during the sandpapering process.

The painter's insurer refused to pay the claim, contending that a separate deductible applied to each damaged window. The court rejected this contention and held that the insured was required to pay only one deductible.

In *Weissblum v. Glens Falls Insurance Co.*, 31 Misc.2d 132, 219 N.Y.S.2d 711 (City Ct.N.Y.1961), the insured's employees broke 189 light bulbs while repairing approximately 4,500 windows at Hunter College. The insurer contended that 189 deductibles applied. But the court stated that the location of the light bulbs on different floors and in various rooms of the building did not compel a conclusion that the damage was the result of 189 separate accidents. The insured was required to pay only one deductible.

The two most recent cases involving fact patterns closely similar to this appeal are *E.G. Michaels v. Mutual Marine Office, Inc.*, 472 F.Supp. 26 (S.D.N.Y.1979), and *Wilkinson & Son, Inc. v. Providence Washington Insurance Co.*, 124 N.J.Super. 466, 307 A.2d 639 (Law Div.1973). The question posed in *E.B. Michaels*, was whether 200 dents or holes in a ship's deck, produced during a nine-day unloading operation, constituted a single occurrence under the insurance policy. The court concluded that all dents or holes resulted from one event or occurrence. The court explained:

Here the unloading of the heavy steel scrap obviously could not have been accomplished in a single lifting. The cargo was such that continuous liftings over a period of time, in this instance days,

P.2d 1146 (1981); *Allied Grand Doll Mfg. Co. v. Globe Indemnity Co.*, supra n. 2; *Arthur A. Johnson Corp. v. Indemnity Insurance Co. of North America*, 7 N.Y.2d 222, 196 N.Y.S.2d 678, 164 N.E.2d 704 (N.Y.Ct.App.1959); *Truck Insurance Exchange v. Rohde*, supra note 2; *Allen v. London Guaranty and Accident Co.*, 28 T.L.R. 254 (1912); *South Staffordshire Tramways Company, Ltd. v. Sickness and Accident Assurance Association, Ltd.*, supra note 1.

4. The policy states, "The deductible amounts stated in the schedule apply as follows:"

(a) *PER CLAIM BASIS*—if the deductible is on a "per claim" basis, *the deductible amount applies* under the Bodily Injury Liability or Property Damage Liability Coverage respectively to all damages because of bodily injury sustained by one person, or to all *property damage sustained by one person or organization, as the result of any one occurrence.*

(b) *PER OCCURRENCE BASIS*—if the deductible is on a "per occurrence" basis, *the deductible amount applies* under the Bodily Injury Liability or Property Damage Liability Coverage, respectively, to all damages because of all bodily injury or *property damage as the result of any one occurrence, regardless of the number of persons or organizations who sustain damages because of that occurrence.*" [Emphasis added.]

were required to complete the discharge. *Unloading the cargo was a unified and continuous function until completion.* The "event" or "occurrence" was thus a continuous process which extended over a period of days; the "accident" was the repetitive use of the hoisting machinery that damaged the tank tops of the ship during unloading; the "single loss" was the total charge for repairs.

472 F.Supp. at 29 (emphasis added). This reasoning parallels our own in the present case.

In *Wilkinson,* carpeting in thirty-four separate apartments in one building under construction was damaged by a worker who was removing traces of tile. The work encompassed one or two days. The damage was held to result from a single occurrence and not, as the insurer claimed, thirty-four occurrences—each subject to a separate $250 deductible. The insured held a policy essentially identical to Campbell's policy. The insured had elected to pay the deductible on a "per claim" basis. The *Wilkinson* court observed:

> The fact that items of property in 34 separate apartments were damaged by the employee during his performing the work does not transform this cleaning operation into 34 separate and divisible occurrences to which the deductible amount would be applicable. It is our opinion that the ordinary and popular meaning which would be given to the term "one occurrence" by the average insured upon purchasing the policy, with reference to the incident giving rise to the present controversy, is that the entire event constituted a single occurrence for which there would be a recovery subject to the deductible amount of $250.

307 A.2d at 643. The court's analysis tracks our own in today's case.

All of these cases involved one injured party. Several acts or an interrelated ser- ies of events caused repetitive damage to that party. This pattern is identical to the situation in our case.[5] We conclude that the claim against Campbell arises from one occurrence. Campbell is required to pay only one $500 deductible. Unigard is obligated to cover the remaining costs.

### III

■ We next consider Unigard's contention that the district court erred by granting attorney fees under I.C. § 41–1839. The statute provides in pertinent part, as follows:

> *Any insurer* issuing any policy, certificate or contract of insurance, surety, guaranty or indemnity of any kind or nature whatsoever, *which shall fail for a period of thirty (30) days after proof of loss has been furnished as provided in such policy,* certificate or contract, *to pay to the person entitled thereto the amount justly due under such policy,* certificate or contract, *shall in any action thereafter brought against the insurer* in any court in this state for recovery under the terms of the policy, certificate or contract, *pay such further amount as the court shall adjudge reasonable as attorney's fees in such action.* [Emphasis added.]

Unigard asserts that the statute does not apply to this lawsuit because the insured is represented by an attorney who also represents, and presumably is being paid by, another insurance company. However, we find no support for this assertion in the quoted language of the statute. The statute applies whenever an insurer fails to make payment under the policy to "the person entitled thereto." The statute directs that attorney fees be awarded as a "further amount" payable to the same "person entitled thereto." The statute does not reflect a narrow purpose of bene-

5. For this reason, Unigard's reliance on *Elston-Richards Storage Co. v. Indemnity Insurance Company of North America,* 194 F.Supp. 673 (W.D.Mich.1960), is misplaced. In *Elston-Richards,* there was no continuous process giving rise to the aggregate damage. Rather, the in- sured's employees, who stacked crated kitchen appliances at various times over a nine-month period, performed negligent acts on separate and independent occasions whenever new ship- ments of appliances were to be stored.

fitting insureds. Rather, it evinces a broader purpose of compelling insurers who dishonor claims to sustain the economic burden of litigation by which their responsibility to pay such claims is ultimately determined.

■ Unigard also contends that the statute is inapplicable because this case is not an "action ... brought against the insurer." We think this is a distinction without a genuine difference in light of the statutory purpose. The economic burden of litigation is virtually the same regardless of whether the insurer is sued as a defendant or the insurer brings a declaratory judgment action as a plaintiff. Here, it will be recalled, USF & G's subrogation suit against Campbell was suspended during the pendency of this declaratory judgment action. If the subrogation suit had been resolved first, and Campbell then had sued Unigard for indemnification, Unigard clearly would have been liable for attorney fees under I.C. § 41–1839. We hold that the statute is not defeated by the strategem of seeking a declaratory judgment. The district court did not err by awarding attorney fees.

The judgment below is affirmed. Costs, including reasonable attorney fees on appeal, to the respondents. *See Halliday v. Farmers Insurance Exchange,* 89 Idaho 293, 404 P.2d 634 (1965).

WALTERS, C.J., and SWANSTROM, J., concur.