769 P.2d 1152

**James E. LAMBERT, Jr.,
Plaintiff–Appellant,**

v.

**NORTHWESTERN NATIONAL
INSURANCE COMPANY,
Defendant–Respondent.**

**No. 17500.**

Court of Appeals of Idaho.

March 8, 1989.

Roberts & Runsvold, Caldwell, for plaintiff-appellant. James M. Runsvold argued.

Quane, Smith, Howard & Hull, Boise, for defendant-respondent. Neal S. Stivers argued.

HUNTLEY, J. Pro Tem.

### I.

James E. Lambert, Jr. (Lambert), brought an action in the magistrate division against Northwestern National Insurance Company (Northwestern) to recover on his garagekeeper's liability policy for losses incurred in the crash of a customer's vehicle. Following a jury trial, judgment was entered in favor of Lambert. The district court, sitting in an appellate capacity, reversed the judgment, remanded the case for further proceedings in the magistrate division, and awarded Northwestern its costs on appeal. Lambert appeals. We affirm the district court's decision.

Lambert is the owner of a repair shop which specializes in the repair of drivelines in four-wheel drive vehicles. In 1983 he purchased a garage owners insurance policy from Northwestern. The policy was in effect during all times relevant to this case.

In September of 1985, Kirk Wright took a 1976 Chevrolet Blazer four-wheel drive vehicle to Lambert's shop for repair. After checking it over, Lambert advised Mr. Wright of problems with the vehicle. An agreement was reached as to the work that was to be done and the price range for the

work. Lambert was authorized to repair a front constant velocity joint and install two universal joints. This work was to be done in the price range of $150.

The agreed upon repairs were completed on a Saturday afternoon. According to Lambert the vehicle needed an extensive test drive, and although he attempted to contact Mr. Wright by phone to so inform him, he was unable to do so. On Sunday Lambert took his wife, a friend, the friend's wife and their friend's baby on the test drive. Lambert and his friend also took hunting rifles to do some road hunting.

The test drive extended from Boise to Warm Lake, to Yellow Pine, and towards McCall. Several problems occurred during the test drive. The most serious problem occurred when the Blazer slid off the road and struck a tree. There was damage to the Blazer and injury to some of its occupants. The accident interrupted completion of the trip. Had it been completed, it appears the test drive would have extended for some 250 to 300 miles.

Northwestern denied coverage under the policy and Lambert subsequently settled with the owner of the Blazer and delivered the damaged vehicle back to him. He then brought suit against Northwestern for the amounts he had expended in settling the claim.

## II.

· The issue before us is whether the district court erred in reversing the judgment entered by the magistrate and remanding the case for new trial because of the magistrate's failure to permit the testimony of an expert witness. The district court's ruling was made under the following circumstances.

Prior to trial, the magistrate granted Lambert's motion in limine suppressing any and all testimony offered by North-

western involving expert knowledge as to the necessity and extent of test drives. Significantly, the magistrate did not preclude Lambert from testifying that the test drive was necessary. His testimony involved expert knowledge that went beyond the realm of lay knowledge.

At about 4:00 p.m. on the final day of the trial, the magistrate changed its prior ruling and determined that Northwestern's expert witness would be allowed to testify. The witness, however, was not immediately available and the court denied Northwestern's request for a continuance until the next day to obtain the witness's presence. Apparently, the trial court believed that since it had earlier indicated it would allow an offer of proof as to the proposed testimony at the close of plaintiff's case, Northwestern had been placed on notice that the court expected the witness to be present at that time.

■■■ A ruling on the admissibility of expert opinion testimony is within the trial court's discretion and will not be disturbed absent a showing of an abuse of discretion. *Davis v. Nelson–Deppe, Inc.*, 91 Idaho 463, 424 P.2d 733 (1967). In Idaho, a person with knowledge or skill qualifying him as an expert may express his opinion as to matters in issue if the opinion would be of appreciable help to the jury in finding the facts. *Stoddard v. Nelson*, 99 Idaho 293, 297, 581 P.2d 339, 343 (1978). An expert is one who possesses skills or knowledge beyond the competency of the average juror. *Sturgis v. Garrett*, 85 Idaho 364, 379 P.2d 658 (1963). Lambert was permitted to testify as to the need and purpose for a test drive. His skill and knowledge in the field of four-wheel drive repair essentially qualified Lambert as an expert. His testimony entailed matters which went beyond lay knowledge, and was helpful to the jury in its finding of fact. This was precisely the issue which Northwestern had indicated its expert would address, presenting a contrary view, when it objected to Lambert's

motion in limine. Therefore, the magistrate's pretrial ruling denying Northwestern the right to present expert witness testimony as to the need or reasonableness of a test drive was erroneous.

■ The facts must be viewed in light of the well-established principle that a motion for a continuance is addressed to the trial judge's sound discretion. *State v. Richardson*, 95 Idaho 446, 511 P.2d 263 (1973). The trial judge's exercise of discretion will not be disturbed on appeal unless the litigant has been deprived of a fundamentally fair trial. *Krepcik v. Tippett*, 109 Idaho 696, 710 P.2d 606 (1985). The magistrate's indication that Northwestern could make an offer of proof at the close of plaintiff's case did not meet the court's obligation to give the defendant a fair opportunity to respond to Lambert's testimony, nor did it serve as notice that Northwestern was to have its expert witness present in the courtroom at that time. Northwestern had subpoenaed the witness. The fact that plaintiff's expert had been subpoenaed demonstrates that diligent effort was made to secure his presence at trial. *Sleeman v. Dickinson County Board of Road Commissioners*, 8 Mich. App. 618, 155 N.W.2d 262, 266 (1967). Further, when the magistrate announced its change of position and adjudged that the expert witness would be allowed to testify, Northwestern immediately attempted to phone him at his place of work in Boise. He could not, however, be reached, apparently because he had left for his residence in Mountain Home. The magistrate erred in denying Northwestern's request for a continuance until the next day to obtain the expert's presence. The testimony of the expert witness would have been relevant on at least two issues. The jury was entitled to hear the testimony of the insurance company's expert witness both: (1) in making its determination of whether the test drive was covered under the policy as an instance in which Lambert was either "attending, servicing, repairing, parking, or storing" the vehicle in his garage operation, and (2) in deciding if Lambert's conduct amounted to a conversion or a personal use beyond the needs of his garage operations.

■ Lambert argues that the policy covered *any* use of the vehicle and, therefore, preclusion of testimony of Northwestern's expert was harmless error. We do not so interpret the policy provision relevant here, which reads:

> 1. **We** will pay all sums the **insured** legally must pay as damages for loss to a covered **auto** left in the **insured's** care while the insured is attending, servicing, repairing, parking or storing it in **your garage operations**, under:
>
> > c. **Collision Coverage.** Caused by the covered **auto's** collision with another object or its overturn.
>
> **"Garage operations"** means the ownership, maintenance or use of locations for garage business and that portion of the roads or other accesses that adjoin these locations. Garage operations includes the ownership, maintenance or use of the **autos** indicated in Part II as covered **autos**. Garage operations also include all operations necessary or incidental to a garage business.

In arguing that the policy covers *any* use of the vehicle, Lambert relies upon the definition of garage operations as including the "ownership, maintenance or *use*" of covered autos. However, Lambert gives undue weight to an isolated provision of the policy, while ignoring the operative language of paragraph 1. From an overall review of the policy, it is clear that "use" is limited to garage connected activities. To the extent the jury instructions may be read as extending coverage under the policy to *any* use of the vehicle by Lambert, they are in error. We read the policy as generally limited to uses within the reasonable, objectively determined scope of the garage operations and reject Lambert's assertion that coverage should be extended to include personal uses which are in no way

germane to the attending, servicing, repairing, parking or storage of the vehicle. In light of our ruling that the policy does not cover Lambert for all uses, there is no way we can read the record and rule as a matter of law whether the test drive was either too long or not.

On remand, the trier of fact must decide the issue of whether the vehicle was being used in garage operations, or whether it was being used for Lambert's personal purposes. Preclusion of Northwestern's expert opinion testimony in the first instance and denial of a reasonable continuance to obtain the testimony after the initial preclusion were prejudicial errors.

The decision of the district court is affirmed. Costs to the respondent, Northwestern. No attorney fees awarded.

WALTERS, C.J., and WINMILL, J. pro tem., concur.