970 P.2d 21

**NORTHLAND INSURANCE COMPANY,
Plaintiff–Appellant,**

v.

**BOISE'S BEST AUTOS & REPAIRS and
Robert C. Pruitt and Nancy Pruitt,
Defendants–Respondents.**

**American States Insurance
Company, Plaintiff,**

v.

**Janet Rice d/b/a A Vista
Pawn, Defendant.**

No. 23221.

Court of Appeals of Idaho.

Aug. 29, 1997.

Hawley, Troxell, Ennis & Hawley, Boise, for plaintiff–appellant.

Sallaz Law Offices, Chtd., and Sisson & Associates, Boise, for respondent, Boise's Best Auto & Repairs.

Substitute Opinion the court's prior opinion dated July 18, 1997, is hereby withdrawn.

PERRY, Judge.

This case involves a dispute over the interpretation of an insurance policy. The insurer filed this declaratory judgment action, seeking a statement that the policy did not provide coverage for a truck which was involved in an accident. Upon cross-motions for summary judgment, the district court concluded that the insurance policy applied to the truck and determined that the insurer was obligated to defend and indemnify the insured. The insurer appeals asking to review the district court's order. We affirm.

## I.

### FACTS AND PROCEDURE

Roy Rice operated A Vista Pawn (hereinafter "Vista Pawn"). Vista Pawn offered and extended pawn agreements on vehicles, as well as other merchandise. Rice held an automobile dealer's license in his name, doing business as Vista Pawn. Rice determined that for liability and business purposes the sale of the vehicles forfeited to the pawn shop should be handled by a separate entity.

In the summer of 1991, Rice started the process of forming Boise's Best Autos & Repairs to manage the used car sales. Rice took steps toward incorporating Boise's Best and toward transferring his dealer's license to that entity. Boise's Best obtained a garage coverage insurance policy from Northland Insurance Company. Boise's Best began operating the used car lot in July 1991. Vista Pawn and Boise's Best car lot were on opposite ends of the same block on Vista Avenue.

The underlying personal injury suit involved a 1972 Ford truck, previously owned by a truck rental company in Kentucky. The truck was purchased by Vista Pawn from Idaho Auto Auction in April 1989. At that time, Vista Pawn received an unendorsed Kentucky title for the truck. In December 1989, Vista Pawn sold the truck to Blue Mountain Mining Co., Inc. The truck remained in Blue Mountain's possession until January 12, 1991, when Blue Mountain pawned the truck back to Vista Pawn. Blue Mountain defaulted on the loan in February 1991 and, according to Rice, Vista Pawn took ownership of the truck. Although Blue Mountain had applied for an Oregon title prior to the events in this case, the title was not issued until after the accident. At all times relevant to this case, the only known title for the truck was the unendorsed Kentucky title. The pawn slip and Kentucky title for the truck were, at some point, physically transferred from Vista Pawn's office to the office of Boise's Best.

On August 8, 1991, a shipment of matchbooks, which Vista Pawn used for advertising, was being delivered to Vista Pawn. The truck being used to deliver the matchbooks was too large to maneuver into position to unload the matchbooks on Vista Pawn's loading dock. Rice contacted his manager at Boise's Best, Patrick Taylor. Rice instructed Taylor to use the truck at issue in this case to assist in delivering the matchbooks to the loading dock. The matchbooks were transferred to the smaller truck and then taken to Vista Pawn's loading dock. It was during this process that Robert Pruitt was allegedly injured by the truck operated by Taylor.

Robert Pruitt filed suit against Boise's Best, Vista Pawn, Roy and Janet Rice and others. Boise's Best sought indemnification and defense from their insurer, Northland. Vista Pawn was separately insured by American States Insurance Company. Northland accepted service in the underlying action and retained counsel to defend Boise's Best. Northland controlled the defense of the action on behalf of Boise's Best. Northland investigated the claim and determined that coverage under the insurance policy did not extend to the truck involved in the accident. Northland filed this action, seeking a declaration that the policy did not provide coverage for this accident. Northland moved, and Boise's Best cross-moved, for summary judgment. The relevant facts were not in dispute, and the district court had only to decide whether, under the facts as set forth by the parties, coverage was required under the terms of the policy. The district court concluded that Northland was obligated to indemnify and defend Boise's Best in this matter and granted summary judgment for Boise's Best. The district court also concluded that Boise's Best was entitled to an award of attorney fees under I.C. § 41–1839.

Northland appeals, claiming that the insurance policy provides coverage only for "owned autos" and that Boise's Best did not own the truck. Further, Northland submits that the truck was not being used for "garage operations" at the time of the accident and was therefore not within the terms of the policy. Finally, Northland argues that the district court erred in awarding attorney fees under I.C. § 41–1839.

Boise's Best argues that the district court's declaratory judgment was appropriate and that the accident was covered by the insurance policy. Boise's Best also claims that even if the terms of the policy do not encompass this accident, Northland should be estopped from denying coverage.

## II.

## ANALYSIS

We first note that summary judgment under I.R.C.P. 56(c) is proper only when there is no genuine issue of material fact and the

moving party is entitled to judgment as a matter of law. On appeal, we exercise free review in determining whether a genuine issue of material fact exists and whether the moving party is entitled to judgment as a matter of law. *Edwards v. Conchemco, Inc.*, 111 Idaho 851, 852, 727 P.2d 1279, 1280 (Ct. App.1986). When assessing the motion for summary judgment, all controverted facts are to be liberally construed in favor of the nonmoving party. Furthermore, the courts must draw all reasonable inferences in favor of the party resisting the motion. *G & M Farms v. Funk Irrigation Co.*, 119 Idaho 514, 517, 808 P.2d 851, 854 (1991); *Sanders v. Kuna Joint School Dist.*, 125 Idaho 872, 876 P.2d 154 (Ct.App.1994).

## A. Owned Autos

The insurance policy issued by Northland extended coverage to "owned autos" only. The first issue is whether the truck was owned by Boise's Best within the meaning of the policy.

■ Insurance policies are first and foremost a matter of contract between the insurer and the insured. *Brinkman v. Aid Ins. Co.*, 115 Idaho 346, 352, 766 P.2d 1227, 1233 (1988). Our standard of review of a lower court's interpretation of a contract depends on whether the contract was ambiguous. *DeLancey v. DeLancey*, 110 Idaho 63, 65, 714 P.2d 32, 34 (1986). If a contract is reasonably subject to conflicting interpretations, then it is ambiguous. *Id.* The question of whether a contract is ambiguous is a question of law, over which we exercise free review. *Id.* In the absence of ambiguity, the contract must be construed in its plain, ordinary and proper sense, according to the meaning derived from the plain wording of the contract. *Juker v. American Livestock Ins. Co.*, 102 Idaho 644, 645, 637 P.2d 792, 793 (1981). Interpretation of an unambiguous document is a question of law and, therefore, a matter of free review. *DeLancey*, 110 Idaho at 65, 714 P.2d at 34. If the contract is ambiguous, the reviewing court should consider extrinsic matters such as the intent of the parties, the purpose sought to be accomplished, the subject matter of the contract and circumstances surrounding the issuance.

*Bonner County v. Panhandle Rodeo Association, Inc.* 101 Idaho 772, 776, 620 P.2d 1102, 1106 (1980). Interpretation of an ambiguous contract presents a question of fact, and we will therefore defer to the findings of the trial court so long as they are supported by substantial competent evidence. *DeLancey*, 110 Idaho at 65, 714 P.2d at 34; *Staggie v. Idaho Falls Consol. Hosps., Inc.*, 110 Idaho 349, 351, 715 P.2d 1019, 1021 (Ct.App.1986).

The meaning of "owned autos" as used in the insurance policy is simply defined as "only those autos you own." In deciding what the term "owned autos" meant under this contract, the district court rejected the narrow definition of ownership offered by Northland, which was based solely on possession of a valid certificate of title, and concluded that such a definition applied primarily to title disputes. The district court then reasoned that ownership, for purposes of financial responsibility, was a much broader concept.

■ To decide whether there was coverage in this case, the district court determined that it was the intent of the parties for the truck to qualify as an auto owned by Boise's Best. The district court noted that the truck was maintained on the used car lot and carried dealer plates assigned to Boise's Best when operating on the highway. Thus, the district court determined that a certificate of title was not necessary for ownership from a standpoint of insurance and that the indicia of ownership held by Boise's Best was sufficient to precipitate insurance coverage under the policy.

On appeal, Northland argues that the district court erred by determining that the vehicle was an "owned auto" when no valid certificate of title was held by Boise's Best. Northland notes that insurance contracts are governed by the statutory and decisional law in force at the time the contract is entered into, and the law becomes a part of the contract. *See Smith v. Idaho Hosp. Serv., Inc.*, 89 Idaho 499, 503, 406 P.2d 696, 698 (1965). Northland claims that the applicable Idaho statutes define ownership as a function of title and that an individual has no interest in a vehicle until a certificate of title to that vehicle is issued in that individual's name.

*See* I.C. §§ 49–502, –503 [1]. Northland acknowledges that a dealer holding a valid dealer's license may avoid the requirement of having a certificate of title issued in the dealer's name and may, instead, reassign an existing title issued in this state. I.C. §§ 49–502, –521. Northland alleges, however, that the physical transfer of the unendorsed Kentucky title from Vista Pawn to Boise's Best did not occur until after the accident and Boise's Best was therefore not the owner of the truck at the time of the accident. Northland further claims that the title to the truck was invalid as a dealer's title because it was not issued in this state.

Boise's Best, on the other hand, argues that the district court was correct in adopting its broader view of "ownership" and asserts that I.C. § 49–116(3) provides the relevant definition.[2] Boise's Best argues that the ownership of a vehicle is an elastic concept which must be determined according to the context. Boise Best's cites *Lopez v. Langer*, 114 Idaho 873, 761 P.2d 1225 (1988) as support for this proposition. *Lopez* involved a suit for negligent entrustment. A young driver struck and killed a pedestrian while driving an automobile registered to his father. The driver had maintained and controlled the vehicle at all times. The vehicle was purchased for the driver, with the driver's money, by his father. The father had endorsed the title and delivered it to the driver's home with the intent to transfer all responsibility and ownership. Upon these facts, the court determined that the district court did not err in instructing the jury that "ownership of a motor vehicle may involve more than mere 'naked legal title.' It includes possession or the right to exercise dominion and control over the motor vehicle." *Id.* at 875, 761 P.2d at 1227. The court stated that it would make no sense, and serve no purpose, to hold one liable for negligent entrustment when that individual had no control over, and no ability to prevent irresponsible driving. *Id.* at 877, 761 P.2d at 1229. Boise's Best argues that because it exercised dominion and control over the vehicle, it was the owner for purposes of the insurance policy.

■ We first note that I.C. § 49–503 provides that a buyer does not acquire any right, title, claim or interest in or to the vehicle until the buyer has received a certificate of title to that vehicle in the buyer's name. In discussing this rule, as it existed prior to the 1988 recodification of the motor vehicle code, the Court in *Lopez* determined that the statute does "explicitly provide that issuance of a certificate of title is required for acquisition of title, [and the] statute places the burden of acquiring title upon the buyer." *Lopez*, 114 Idaho at 877, 761 P.2d at 1229; I.C. § 49–404 (1987). The court stated that the notice provisions of that statute were specifically designed to apply in creditor attachment proceedings. *Lopez*, 114 Idaho at 877, 761 P.2d at 1229. This Court has addressed the question of whether holding a certificate of title

1. Idaho Code Section 49–502 states:

Delivery of certificate of title upon sale or disposition—Reassignment by dealers.—No person shall sell or otherwise dispose of a vehicle without delivery to the purchaser or transferee a certificate of title with an assignment as necessary to show title in the purchaser, nor purchase or otherwise acquire or bring into the state a vehicle except for temporary use as provided by section 49–432, Idaho Code, unless he shall obtain a certificate of title in his name in accordance with the provisions of this chapter. Any dealer holding current Idaho dealer license plates may, in lieu of having a certificate of title issued in his name, reassign any existing certificate of title issued in this state.

Idaho Code Section 49–503 states:

Issuance of certificate of title requisite to acquisition of title—Waiver or estoppel.—Except as provided in sections 49–502, 49–510 through 49–512, and 49–514, Idaho Code, no person acquiring a vehicle from the owner, whether the owner is a dealer or otherwise, shall acquire any right, title, claim or interest in or to the vehicle until he has issued to him a certificate of title to that vehicle, nor shall any waiver or estoppel operate in favor of that person against a person having possession of a certificate of title or an assignment of the certificate of the vehicle for a valuable consideration.

2. Idaho Code Section 49–116(3) states:

(3) "Owner" means a person, other than a lienholder, having the property in or title to a vehicle. The term includes a person entitled to the use and possession of a vehicle subject to a security interest in another person, but excludes a lessee under a lease not intended as security. "Owner" for the purposes of chapter 12 means the person legally responsible for the operation of a vehicle upon the highways of the state of Idaho, whether as owner, lessee or otherwise.

was sufficient to establish ownership as against one claiming to have purchased the vehicle. *Latham Motors, Inc. v. Phillips,* 123 Idaho 689, 851 P.2d 985 (Ct.App.1992). In that case, we discussed the predecessors of I.C. §§ 49–116(3), –502, and –503, stating:

> The language of the Motor Vehicle Code . . . is clear and unambiguous in providing that the owner of a vehicle is one who holds legal title to the vehicle, and "no person . . . shall . . . acquire any . . . title . . . in or to [a] motor vehicle until he shall have issued to him a certificate of title to said motor vehicle . . ."

*Latham,* 123 Idaho at 694, 851 P.2d at 990, *quoting* former I.C. § 49–404.

■ The earlier version of I.C. § 49–116(3) defined an owner as a "person who holds the legal title of a vehicle." I.C. § 49–401(e) (repealed effective January 1, 1989, 1988 Idaho Sess. Laws, ch. 265, § 69, p. 549); *Latham,* 123 Idaho at 693, 851 P.2d at 989. Idaho Code Section 49–116 now provides a different and more expansive definition of owner. The change in the language of I.C. § 49–116 is most pronounced in that portion of the statute that addresses the Idaho Motor Vehicle Financial Responsibility Act, part of which requires liability insurance for motor vehicles. *See* I.C. § 49–1229. We conclude that the legislative change in I.C. § 49–116 was intended to broaden the scope of the definition of ownership as it relates to civil liability and insurance.

Idaho Code Sections 49–502 and 503 place the burden on the buyer to acquire title to protect the buyer's beneficial interest in the vehicle in cases involving creditor attachment or adverse claims for the same vehicle. However, I.C. § 49–116 provides a broader definition as it relates to responsibility for the vehicle. Idaho Code Section 49–116(3) allows civil liability to accrue once the buyer takes control and possession of the vehicle. Anyone within the broader definition of owner must provide liability insurance for the motor vehicle. I.C. § 49–1229. As the contract in this case relates to civil liability and insurance, we conclude that the statutory definition most applicable to the insurance contract between the parties was that provided in I.C. § 49–116(3). Hence, the district

court properly ruled that Boise's Best was the "owner" of the vehicle for purposes of insurance in this case. Because we have determined that considerations, aside from the title certificate itself, appropriately established the ownership of the vehicle in this case, Northland's arguments regarding the validity of the Kentucky title and timing of the transfer thereof are not relevant.

## B. Garage Operations

■ Northland claims that the accident was outside the policy limits even if Boise's Best owned the truck. The insurance policy provides coverage for bodily injuries or property damage caused by an accident involving a covered vehicle and resulting from "garage operations." Northland argues that delivering advertising materials for Vista Pawn does not constitute a garage operation. The policy defines garage operations as:

> The ownership, maintenance or use of locations for garage business and that portion of the roads or other accesses that adjoin these locations. "Garage operations" includes the ownership, maintenance or use of the "[owned] autos" . . . "Garage operations" also include all operations necessary or incidental to a garage business.

In interpreting this provision, the district court determined that the second sentence of the definition provides that, if the auto is an owned auto, any use is covered.

Northland argues that the district court's conclusion was error in light of this Court's holding in *Lambert v. Northwestern National Ins., Co.,* 115 Idaho 780, 769 P.2d 1152 (Ct.App.1989). In *Lambert,* the vehicle was taken into the garage for repair work. An employee of the garage took his family and friends on a 250–mile "test drive" which included hunting. The language of the policy appeared to cover any "use" of vehicles left in the care of the repair shop by customers. We concluded, however:

> From an overall review of the policy, it is clear that "use" is limited to garage connected activities. . . . We read the policy as generally limited to uses within the reasonable, objectively determined scope of the garage operations and reject Lambert's as-

sertion that coverage should be extended to include personal uses which are in no way germane to the attending, servicing, repairing parking or storage of the vehicle.

*Lambert,* 115 Idaho at 783–84, 769 P.2d at 1155–56.

We conclude that *Lambert,* however, is distinguishable from this case. Here, the activities of unloading advertising materials for the pawn shop were related to Boise's Best's business. According to Rice, the operations of Boise's Best at the time of the incident consisted entirely of selling cars pawned and forfeited to Vista Pawn. Boise's Best was created to satisfy this function. Hence, although the matchbooks did not name Boise's Best, the advertisements for Vista Pawn would be for the benefit of Boise's Best. Accordingly, the manner in which the truck was being used by Boise's Best was germane to the operation of the business and was encompassed by the term "garage operations." We affirm the district court's order granting summary judgment to Boise's Best.

## C. Attorney Fees

■ At trial, the district court granted attorney fees to Boise's Best under the provisions of I.C. § 41–1839. Northland now appeals this determination, claiming that it was error for the district court to award fees under section 41–1839.

Idaho Code Section 41–1839(1) provides:

(1) Any insurer issuing any policy, certificate or contract of insurance, surety, guaranty or indemnity of any kind or nature whatsoever, which shall fail for a period of thirty (30) days after proof of loss has been furnished as provided in such policy, certificate or contract, to pay to the person entitled thereto the amount justly due under such policy, certificate or contract, shall in any action thereafter brought against the insurer in any court in this state for recovery under the terms of the policy, certificate or contract, pay such further amount as the court shall adjudge reasonable as attorney's fees in such action.

In *Unigard Ins. Co. v. United States Fidelity and Guaranty Co.,* 111 Idaho 891, 728 P.2d 780 (Ct.App.1986), we held that awards of attorney fees under I.C. § 41–1839 were appropriate in declaratory relief actions brought by the insurer against the insured. We noted:

Unigard also contends that the statute is inapplicable because this case is not an "action ... brought against the insurer." We think this is a distinction without a genuine difference in light of the statutory purpose. The economic burden of litigation is virtually the same regardless of whether the insurer is sued as a defendant or the insurer brings a declaratory judgment action as a plaintiff.... We hold that the statute is not defeated by the stratagem of seeking a declaratory judgment.

*Id.* at 896, 728 P.2d at 785.

The same reasoning that we adopted in *Unigard* had been followed earlier by the federal courts in construing I.C. § 41–1839. *Automobile Club Ins. Co., Inc. v. Tyrer,* 560 F.Supp. 755 (D.Idaho 1983), *aff'd,* 734 F.2d 20 (9th Cir.1984).

Northland argued below that *Union Warehouse and Supply Co., Inc. v. Illinois R.B. Jones, Inc.,* 128 Idaho 660, 917 P.2d 1300 (1996) applied and mandated that attorney fees not be awarded under I.C. § 41–1839. In *Union,* the insured filed a declaratory relief action against the insurer, seeking coverage, even though at the time the suit was brought, no claims had yet been filed against the insurer. The Idaho Supreme Court reversed the award of attorney fees under I.C. § 41–1839, holding that it did not apply in that case. In this case, the district court, in its ruling on costs and attorney fees, stated:

I conclude that policyholders who prevail in declaratory judgment actions filed by their insurer to contest coverage under a policy issued are entitled to their attorney fees under Idaho Code § 41–1839. *Martin v. Argonaut Insurance,* 91 Idaho 885 [434 P.2d 103] (1967); *Bonner County v. Panhandle Rodeo Association,* 101 Idaho 772 [620 P.2d 1102] (1980); *Unigard Insurance Company v. U.S.F. & G.,* 111 Idaho 891 [728 P.2d 780] (Ct.App.19[8]6)....

*Union Warehouse & Supply v. Illinois R.B. Jones,* [128 Idaho 660, 917 P.2d 1300 (1996)] is an apparent aberration. The case makes passing reference to the line of authority in Idaho which clearly contemplates attorney fees under I.C. § 41–1839 to the prevailing policyholder in a declaratory judgment action, but distinguishes the *Union Warehouse* case on its facts from this line of authority. I conclude therefore that the supreme court's ruling in *Union Warehouse* is limited to the facts of that case, and does not change the general rule in Idaho that attorney fees are available. *Union Warehouse* is not a change in the direction of the law in Idaho as expressed in other cases.

We agree with the district court that *Union* does not apply in this case. In *Union,* it was the insured who brought the declaratory relief action. According to the statute, the insured is only entitled to recover attorney fees if: (1) the insured provides proof of the loss; (2) the insurer has failed to pay an amount justly due under the policy within thirty days of the proof of loss; and (3) the insured is thereafter compelled to bring suit to recover for the loss. In *Union,* the Supreme Court recognized that the first requirement may be waived by the insurer if it denies any coverage or a defense. The Supreme Court found, however, that the insured had failed to establish that any sums were "justly due" and therefore reasoned that the statute did not apply. *Union,* 128 Idaho at 669, 917 P.2d at 1309. *Union* does not address *Unigard, Automobile Club Ins. Co.* or the rule that, in those cases where it is the *insurer* who brings the declaratory relief action, attorney fees may be awarded under I.C. § 41–1839 if the insured prevails.

Northland argues that *Union* stands for the proposition that no fees are awardable under I.C. § 41–1839 in any declaratory relief action. We disagree. If we were to adopt this reasoning, I.C. § 41–1839 would be rendered a nullity. Any wise insurer would be encouraged to sue their insured if the slightest coverage issue existed, as it would be far more cost effective to sue the insured for declaratory relief, thereby avoiding the possibility of attorney fees and ob-

taining a definite answer regarding the coverage issue, than to either deny coverage and run the risk of a suit by the insured or to provide coverage in spite of the coverage issue. The effect would be that insurers would be encouraged to litigate rather than erring in favor of coverage for their insureds if a coverage issue existed. This absurd result, an increase in litigation against insureds, all of whom would be forced to bear their own attorney fees, is clearly not what the legislature intended by enacting this section. We do not believe that *Union* intended to advance this position either.

As such, we hold that the district court did not err in granting attorney fees to Boise's Best and the award of attorney fees is affirmed.

## III.

## CONCLUSION

The district court's grant of a summary judgment declaring that Northland was obligated to defend and indemnify Boise's Best is affirmed. The order of the district court awarding attorney fees under I.C. § 41–1839 is also affirmed. Costs, but not attorney fees, are awarded to the respondent, Boise's Best Autos & Repairs.

WALTERS, C.J., and SWANSTROM, Pro Tem. Judge, concur.