[844 NYS2d 257]

INTERNATIONAL FLAVORS & FRAGRANCES, INC., Appellant, et al., Plaintiff, v ROYAL INSURANCE COMPANY OF AMERICA et al., Defendants, and AMERICAN HOME ASSURANCE COMPANY et al., Respondents.

First Department, October 30, 2007

## APPEARANCES OF COUNSEL

*Dickstein Shapiro LLP*, New York City (*Nicholas J. Zoogman* of counsel), for appellant.

*Mound Cotton Wollan & Greengrass*, New York City (*Ellen G. Margolis* of counsel), for respondents.

## OPINION OF THE COURT

TOM, J.P.

At issue on this appeal is whether personal injury sustained by workers employed at the same manufacturing plant resulting from exposure to a toxic substance found in butter flavoring should be considered a single "occurrence" for the purpose of applying a deductible under insurance policies affording products liability coverage.

Plaintiffs International Flavors & Fragrances, Inc. (IFF) and Bush Boake Allen, Inc. commenced this declaratory judgment action against their insurers, including defendants American Home Assurance Company and National Union Fire Insurance Company, members of the American International Group (collectively, AIG). The complaint seeks a declaration of coverage under eight general liability insurance policies in connection with a class action lawsuit filed against plaintiffs in Jasper

County, Missouri by 30 current and former employees of nonparty Gilster-Mary Lee Corporation (*Benavides et al. v International Flavors & Fragrances, Inc., et al.*, No. 01CV683025 [Mo Cir Ct, filed Sept. 7, 2001]), which owns and operates a microwave popcorn packaging plant in Jasper County, Missouri. The *Benavides* plaintiffs alleged that IFF and its predecessor in interest, Bush Boake Allen, manufactured and sold butter flavoring to Gilster used in microwave popcorn packaged in its Jasper facility. According to the *Benavides* complaint, the butter flavoring contains diacetyl and other volatile organic compounds, which the *Benavides* plaintiffs alleged caused lung impairment and other respiratory system injuries. IFF admitted that at least 18 separate shipments of butter flavoring were sent to the Jasper plant from 1992 through 1996.

In dispute is the application of deductibles or "self-insured retentions" (SIRs) in the amount of $100,000 or $50,000 for each "occurrence," which is uniformly defined in all of the policies as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." The first two policies issued by National Union in 1991 and 1992 apparently provided that the SIR is to be applied on a "per claim" basis, which would require application of the deductible to each of the 30 injured workers' claims.[1] The remainder of the policies, issued on or after May 1, 1993 and affording coverage through May 1, 1999, provide that a "per occurrence" deductible applies "[t]o all damages because of 'bodily injury' as the result of any one 'occurrence' . . . regardless of the number of persons or organizations who sustain damages because of that 'occurrence.' "

AIG brought a motion for summary judgment seeking, inter alia, a declaration that each of the personal injury claims in the underlying action constitutes a separate occurrence under the policy definition. AIG relied on *In re Prudential Lines Inc.* (158 F3d 65, 81 [2d Cir 1998]), which applied a separate deductible to each of the persons injured by exposure, at different times, to asbestos on a ship. In opposition, IFF contended that the exposure of the injured employees to the hazardous ingredients in its butter flavoring constitutes a single such occurrence,

---

1. The briefs indicate that the parties have been unable to locate the deductible provision for the policy issued in 1991, and the copy of the policy issued in 1992 contained in the record is largely illegible. In addition, the policies issued in 1997 and 1998 do not reflect the amount of the applicable deductible.

without regard to the number of employees who were injured. IFF relied on *Uniroyal, Inc. v Home Ins. Co.* (707 F Supp 1368, 1369, 1383 [ED NY 1988]), a class action in which injury sustained by approximately 2.5 million Vietnam veterans from contact with Agent Orange as a consequence of a series of product deliveries by the policyholder was held to be the result of a single occurrence.

Supreme Court granted AIG's motion, declaring that each of the underlying personal injury claims constitutes a separate occurrence subject to a separate deductible or SIR. The court reasoned that the event precipitating coverage under the policies is the occurrence resulting in injury, not the actual injury itself (citing *Matter of Midland Ins. Co.*, 269 AD2d 50, 61 [2000]). The court concluded that the injury sustained by each of the employees did not result from a single occurrence because each employee was exposed to the hazardous chemicals at different times (citing *Aguirre v City of New York*, 214 AD2d 692 [1995] and *In re Prudential Lines Inc.*, 158 F3d 65 [1998]). The court therefore held that each worker's individual claim is a separate occurrence under the policy definition (citing *Olin Corp. v Insurance Co. of N. Am.*, 972 F Supp 189 [SD NY 1997], *affd* 221 F3d 307 [2d Cir 2000]). A subsequent motion by IFF seeking reargument was denied. Plaintiff IFF appeals.

This Court concludes that "occurrence," as defined in the policy as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions," does not reflect the parties' intent to aggregate the individual claims for the purpose of subjecting them to a single policy deductible.

On appeal, plaintiff argues that language similar to that contained in the subject commercial liability policies has been interpreted to contemplate a single occurrence without regard to the number of persons injured where personal injury or property damage arose from exposure to substantially the same general harmful conditions (citing *Champion Intl. Corp. v Continental Cas. Co.*, 546 F2d 502, 505-506 [2d Cir 1976], *cert denied* 434 US 819 [1977] [policyholder's distribution of defective vinyl paneling resulting in damage to 1,400 vehicles constitutes a single occurrence]). Defendants contend that this controversy is governed by this Court's ruling in *Appalachian Ins. Co. v General Elec. Co.* (19 AD3d 198 [2005], *affd* 8 NY3d 162 [2007]), which concerned excess insurance policies containing a similar definition of "occurrence." There, we affirmed an order declar-

ing that each of the injured workers' claims represented a separate occurrence because, under the "unfortunate event" test (*Arthur A. Johnson Corp. v Indemnity Ins. Co. of N. Am.*, 7 NY2d 222, 229 [1959]; *see also Hartford Acc. & Indem. Co. v Wesolowski*, 33 NY2d 169, 173 [1973]), the exposure of the individual plaintiffs to asbestos over a period of decades at numerous work sites lacked the requisite temporal and spatial proximity to be deemed a single occurrence (*see Appalachian*, 8 NY3d at 169-170). In affirming, the Court of Appeals noted that, in the absence of language indicating some other standard should be applied for the purpose of grouping incidents into a single occurrence, "the unfortunate-event standard governs the outcome" (*id.* at 173). Whether a series of losses or injuries are a result of a single or multiple occurrences is determined by:

> "whether there is a close temporal and spatial relationship between the incidents giving rise to injury or loss, and whether the incidents can be viewed as part of the same causal continuum, without intervening agents or factors. Common causation is pertinent once the incident—the fulcrum of our analysis—is identified, but the cause should not be conflated with the incident" (*id.* at 171-172).

Since sophisticated parties to an insurance contract such as these are free to define "occurrence" in such a manner as to provide for the aggregation of claims (*id.* at 173), analysis begins with the policy language. The general liability policies issued by AIG all provide that the deductible applies "[t]o all damages because of 'bodily injury' as the result of any one 'occurrence' . . . regardless of the number of persons or organizations who sustain damages because of that 'occurrence.' " Whether a single deductible applies is therefore dependent on whether or not the loss sustained by the insured can be attributed to a single incident, irrespective of the number of persons sustaining injury. The policies equate "an occurrence" with "an accident," which term is defined to "includ[e] continuous or repeated exposure to substantially the same general harmful conditions."

As observed in a case construing the identical definition contained in the subject AIG policies, "Occurrence is not defined by the injury sustained but rather in terms of its cause" (*Aguirre*, 214 AD2d at 693 [spray-painting of vessel resulting in damage to 40 automobiles from wind-blown paint constitutes a single occurrence]). While the language of the policies' deductible provision makes it clear that it is to be applied without

regard to the number of persons injured, the definition of "occurrence" does not require the conclusion that the exposure of multiple individuals "to substantially the same general harmful conditions" constitutes a single event for the purpose of applying the deductible. Fairly construed, the policy definition reflects the parties' intent to construe as a single occurrence the "continuous or repeated exposure" of any one person to "harmful conditions." As pertinent to this dispute, it similarly reflects the intent to treat as a single occurrence the "continuous or repeated exposure" of multiple persons to "harmful conditions" that result from a single "accident." The definition does not, however, extend to the circumstances presented here, where there is no single incident that can be identified as the event resulting in injury to the numerous claimants. The affected employees sustained injury as a consequence of repeated deliveries of IFF's flavoring compound to their workplace over a period of several years, causing them to be exposed to the hazardous chemicals at different times and for periods of unequal duration. In sum, under the definition contained in the AIG policies, the exposure of numerous persons to a hazardous condition cannot be deemed a single "occurrence" in the absence of any identifiable precipitating event or "accident" (*cf. Michaels v Mutual Mar. Off., Inc.*, 472 F Supp 26, 30 [SD NY 1979] [unloading of ship was the single occurrence giving rise to 200 dents in cargo holds over a nine-day period]).

Had these sophisticated parties desired to aggregate all claims resulting from the exposure or series of exposures to a set of hazardous conditions, it would have been a simple matter to rewrite the definition of "occurrence." For example, aggregation of individual claims was found to be warranted by the policy language examined in *Ramirez v Allstate Ins. Co.* (26 AD3d 266 [2006]), cited by IFF, which illustrates the importance of drafting an explicit aggregation provision. In *Ramirez*, two children sustained injury as a result of ingesting lead paint found in the apartment they occupied. Recoverable damages were limited to the insurance policy's "per occurrence" limit of $200,000. Rather than making application of the deductible subject to a separately defined "occurrence," as in the instant matter, the policy in *Ramirez* simply provided: "All bodily injury and property damage resulting from continuous or repeated exposure to the same general conditions is considered the result of one occurrence" (*id.*). "All bodily injury" clearly encompasses the injuries sustained by the two infant plaintiffs as a result of their

exposure to the same hazardous substance so as to comprise only "one occurrence" under this provision.

As the Court of Appeals noted in *Appalachian* (8 NY3d at 173), "the term occurrence is synonymous with accident unless the parties include language in the policy indicating otherwise." In the absence of such language, the "unfortunate-event standard" will be applied to determine whether or not a claim constitutes a single occurrence (*id.*). The Court went on to state:

> "Applying that standard, the asbestos exposure claims GE seeks to join as one occurrence (per policy period) represent multiple occurrences. Using the language adopted by the parties in the . . . policies, the incident that gave rise to liability was each individual plaintiff's 'continuous or repeated exposure' to asbestos. Before the exposures occurred, there was only the potential that some unidentified claimant would someday be harmed by GE's alleged failure to warn. To be sure, the exposure to asbestos was not sudden—it was gradual and, for many plaintiffs, continued over a number of years. But that does not make it any less the operative incident or occasion giving rise to liability in this factual context" (*id.* at 173-174).

*Champion Intl. Corp. v Continental Cas. Co.* (546 F2d 502 [1976], *supra*), urged by IFF to require us to find only a single occurrence, merely illustrates both the need to draft a precise aggregation of claims provision and to identify "the operative incident or occasion giving rise to liability" (*Appalachian*, 8 NY3d at 174). In *Champion*, defective vinyl panels delivered to 26 different companies were installed in some 1,400 vehicles resulting in damage to those vehicles. It was held that the sale of the paneling was a continuous and repeated process comprising a single occurrence under the policy (546 F2d at 506). Applying this reasoning, IFF contends that its continuous sale of butter flavoring over the course of several years should likewise be regarded as a single occurrence.

IFF overlooks two crucial distinctions between *Champion* and the circumstances of the instant matter. First, as in *Ramirez*, the policy under review in *Champion* explicitly provided that "all . . . property damage arising out of continuous or repeated exposure to substantially the same general conditions . . . shall be considered as arising out of one occurrence" (*id.* at 505). Second, the event resulting in the seller's liability was its appar-

ent failure to supply merchandise conforming to contract specifications or to furnish goods reasonably suitable for their intended purpose (UCC 2-314 [2] [c]). In evaluating the insured's liability, the Circuit Court noted, "Exposure there was, when Champion sold the paneling" (*id.* at 506). Thus, "the operative incident or occasion giving rise to liability" under *Appalachian* arose from the insured's breach of contract, and that breach was complete upon delivery of the defective paneling and immediately actionable. Unlike a claim sounding in tort, a contract action does not require the plaintiff to demonstrate injury since nominal damages are available (*see Kronos, Inc. v AVX Corp.*, 81 NY2d 90, 95 [1993]). By comparison, "a tort cause of action cannot accrue until an injury is sustained" and, thus, must be based on actual damages (*id.* at 94). In the instant matter, the shipment of butter flavoring by IFF presented only the potential for injury; it was the exposure to diacetyl and other volatile compounds, though gradual and continuing over the course of years, that precipitated the actual harm, comprising the "occasion giving rise to liability in this factual context" (*Appalachian*, 8 NY3d at 174; *see also In re Prudential Lines Inc.*, 158 F3d at 84; *Metropolitan Life Ins. Co. v Aetna Cas. & Sur. Co.*, 255 Conn 295, 305, 765 A2d 891, 896 [2001]).

Examined from this perspective, *Uniroyal, Inc. v Home Ins. Co.* (707 F Supp 1368, 1369, 1383 [1988], *supra*), also relied upon by IFF, lends no support to its position. In that case, the claims of Vietnam veterans for injuries sustained due to their exposure to Agent Orange were held to comprise a single occurrence. The plaintiff's insurance policy defined "occurrence" as:

> " 'an accident or a happening or event or a continuous or repeated exposure to conditions which unexpectedly and unintentionally results in personal injury, property damage or advertising liability during the policy period. All such exposure to substantially the same general conditions existing at or emanating from one premises location shall be deemed one occurrence.' " (707 F Supp at 1372.)

Applying New York law, the federal court observed that "[t]he occurrence is not defined to be the injury; the injury is clearly stated to be the *result* of the occurrence" (*id.* at 1380), employing precisely the same analysis as in *Aguirre* (214 AD2d at 693 ["Occurrence is not defined by the injury sustained but rather in terms of its cause"]). The court then applied the unfortunate event test to find that the occurrence contemplated by the policy

was "the delivery of the herbicides by Uniroyal to the military" (707 F Supp at 1382).

This reasoning cannot be reconciled with *Appalachian*. Under the Court of Appeals' analysis, delivery of the herbicide to the military cannot be regarded as the event precipitating injury because delivery of a hazardous substance merely poses the *potential* for injury (*Appalachian*, 8 NY3d at 174); it is subsequent exposure that results in *actual* injury, which must be demonstrated to impose liability in tort on the insured (*Kronos*, 81 NY2d at 94). Although the federal court expressed its inability to identify any particular precipitating event resulting in injury, it proceeded to designate one nevertheless.[2] Prevailing authority gives the parties the latitude to apply a different test to determine whether claims should be aggregated. As the Court of Appeals observed, "sophisticated parties could have chosen to define occurrence in a manner that grouped incidents" (*Appalachian*, 8 NY3d at 173).

Though *Uniroyal* is factually similar, it is readily distinguished on the law because it is now clear that, under New York law, the injury imposing liability on the insured does not result until exposure occurs. The policy definition in the instant matter merely defines "occurrence" as an "accident, including continuous or repeated exposure to substantially the same general harmful conditions." Even if exposure to a toxic substance were to be regarded as being tantamount to an accident, as IFF suggests, it hardly compels the conclusion that any and all persons so exposed are victims of the same accident. Here, 30 victims were continuously and repeatedly exposed to diacetyl. In the absence of policy language making it clear that any and all personal injury resulting from such exposure is to be regarded as a single occurrence (*cf. Ramirez*, 26 AD3d at 266), the exposure of the individual claimants to diacetyl on different occasions, extending over different periods of time, supports the

---

2. The court stated that "the terms of the definition of 'occurrence' are partly ambiguous: they identify a set of possible occurrences, but give little assistance in selecting the proper item from that set" (*Uniroyal*, 707 F Supp at 1382). The court explained that

> "[t]he 'unfortunate event' in the *Agent Orange* context could hence be one of several interrelated causally contributing events; among those are the defective manufacture of dioxin-contaminated herbicides, the delivery of those herbicides to the military, the spraying of the herbicides in Vietnam, and the touching of herbicide molecules to a particular serviceman's skin" (*id.*).

finding that these are 30 discrete occurrences. In short, the language employed in the AIG policy definition is insufficient to require the conclusion that the parties intended to aggregate the individual underlying claims in this matter.

IFF's argument that the lack of certain evidence precludes the award of summary judgment is without merit. The missing deductible provision (1991 policy) and the absence of an amount for the applicable deductible in two policies (1997 and 1998) are not material to the construction of the definition of "occurrence" at issue in this matter, which is identical in all eight policies. IFF advances other contentions that are not evidentiary but merely require this Court to interpret the AIG insurance policies to assess the parties' intent, an exercise that involves only the application of contract law. It is well settled that where an agreement has been reduced to writing, the best evidence of what the parties intended is the contract itself (*Slamow v Del Col*, 79 NY2d 1016, 1018 [1992], *affg* 174 AD2d 725 [1991]) and, unless it is ambiguous, construction of a contract is a matter of law for the courts (*West, Weir & Bartel v Mary Carter Paint Co.*, 25 NY2d 535, 540 [1969]).

Accordingly, the order of the Supreme Court, New York County (Charles Edward Ramos, J.), entered January 20, 2006, which, inter alia, granted summary judgment to defendants American Home Assurance Company and National Union Fire Insurance Company of Pittsburgh, Pennsylvania, declaring that each of the underlying personal injury plaintiffs' claims constitutes a separate "occurrence" under the primary insurance policies issued by said defendants, should be affirmed, with costs. Appeal from the order of the same court and Justice, entered May 8, 2006, which denied plaintiff IFF's motion to reargue, should be dismissed, without costs, on the ground that no appeal lies from the denial of a motion to reargue.

SULLIVAN, NARDELLI and BUCKLEY, JJ., concur

Order, Supreme Court, New York County, entered January 20, 2006, affirmed, with costs. Appeal from order, same court, entered May 8, 2006, dismissed, without costs.