OPINION OF THE COURT
Eileen Bransten, J.
In motion sequence number 077, Lumbermens Mutual Casualty Company (Lumbermens) moves for partial summary judgment in its favor. In motion sequence number 078 (together with motion sequence number 077, the motions), Mt. McKinley Insurance Company (Mt. McKinley), formerly known as Gibraltar Casualty Company, and Everest Reinsurance Company (Everest), formerly known as Prudential Reinsurance Company, move for partial summary judgment in their favor and in Lumbermens’ favor for a declaration (1) that each underlying Corhart-related and Unibestos-related asbestos bodily injury claim constitutes a separate occurrence under the insurance policies at issue and (2) that Corning Incorporated (Corning) is obligated to pay a per-occurrence deductible limit under the Lumbermens policies for each policy period implicated by each occurrence from January 1, 1972 through April 1, 1985.
Allianz Insurance Company, Allstate Insurance Company, American Centennial Insurance Company, Arrowood Indemnity Company, Continental Casualty Company, Continental Insurance Company, Hudson Insurance Company, and London Market Insurers (together with Lumbermens, Mt. McKinley and Everest, the moving insurers) have joined in either the motions or Mt. McKinley’s and Everest’s motion only (the joinders).[1]
*895 Corning opposes the motions and the joinders. Century Indemnity Company (Century) has joined in Coming’s opposition.
Background
The following facts are undisputed:
Mt. McKinley and Everest commenced this declaratory judgment action on July 2, 2002 (Lumbermens’ Statement of Material Facts 111). The complaint names Corning, Lumbermens and other insurance companies as defendants (id.).
Corhart Claims
Corning and Hartford Empire Company formed Corhart Refractories Company (Corhart) circa 1927 to manufacture and sell refractory bricks for use in constructing furnaces to make glass products at high temperatures (id. II 6).
In the 1950s, Corning acquired all of the outstanding stock of Corhart and Corhart became Coming’s subsidiary (id. II 7). In 1985, Corning sold the assets of Corhart in a management buyout and retained no interest in the company (id.). However, Corning retained liability arising out of any Corhart product sold during the time when Corning owned Corhart (id.).
Corhart had sold a certain type of high-end, expansive refractory brick to the steel industry for use in constmcting roofs of open hearth steel furnaces (id. H 8). None of Corhart’s refractory bricks contained asbestos (id.). However, on occasion, for approximately 10 years starting in 1962, some of Corhart’s customers requested spacer material to use between the refractory bricks being installed to construct open hearth furnaces (id.). Corhart sometimes provided, without charge, to customers in the steel industry a paper material that is alleged to have contained asbestos (id.).
Corhart provided the paper spacer material to the steel industry mainly in five or six states, including Pennsylvania, West Virginia and Ohio (id. IT 9).
*896 In numerous underlying actions, claimants have alleged that Corning faces potential liability arising out of asbestos containing spacers distributed by Corhart {id. 11 5). The underlying claimants allege exposure to Corhart-distributed asbestos-containing products during the installation, tear down and/or destruction of furnaces {id. 1112; see Statement of Material Facts-Lumbermens at 12).
Unibestos Claims
Corning and PPG Industries, Inc. (PPG) formed Pittsburgh Corning Corporation (PCC) in 1937 to develop, manufacture and sell glass building products (Mt. McKinley’s and Everest’s Statement of Material Facts 11 1). From 1962 to 1972, PCC manufactured and sold an asbestos-containing, high temperature and molded pipe insulation product called “Unibestos” {id. 112).
Unibestos was manufactured at PCC’s plants in Tyler, Texas and Port Allegany, Pennsylvania {id. If 3).
PCC’s manufacture of Unibestos led to it being named a defendant in hundreds of thousands of asbestos related personal injury lawsuits {id. 1111). From the filing of the first asbestos suits against PCC in the. late 1960s until PCC entered bankruptcy in 2000, PCC defended over 200,000 asbestos bodily injury claims {id. 1112). At the time it filed its bankruptcy petition in 2000, approximately 235,000 unresolved asbestos bodily injury claims remained pending against PCC {id. 1116).
Corning has been named as a defendant in a number of lawsuits that allege that Corning is liable for injuries claimants allegedly sustained as a result of exposure to Unibestos {id. 1117). Beginning in 1974, cases alleging injuries from exposure to Unibestos were brought against Corning in Brazoria County, Orange County and Jefferson County, Texas {id. 1118). In 1974, workers at PCC’s Tyler, Texas plant filed an action known as Yandle/Kay, which eventually included over 2,000 claimants {id. 1119). Another group of claimants from the Tyler, Texas plant who alleged exposure to asbestos filed a series of cases known as Tyler II {id. 11 20). Additionally, employees of PCC’s Port Allegany plant also filed suit against Corning and others in a case known as the Barber action {id. H 21).
Relevant Policy Language
The Lumbermens policies in effect from April 1, 1977 to April 1, 1985 each contain the following provisions:
*897 “Insuring Agreement.
“The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of A. bodily injury or B. property damage to which this insurance applies, caused by an occurrence, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage, even if any of the allegations or the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient . . .
“Limit of Liability language . . .
“For purposes of determining the limit of the company’s liability, all bodily injury and property damage arising out of continuous or repeated exposure to substantially the same general conditions shall be considered as arising out of one occurrence . . .
“ ‘Occurrence’ definition.
“ ‘[Occurrence’ means an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured . . .
“ ‘Bodily injury’ definition.
“ ‘Bodily injury’ means bodily injury, sickness or disease sustained by any person which occurs during the policy period, including death that result at any time resulting therefrom” {id. If 15) .[2]
The moving insurers’ policies provide coverage to Corning on a per-occurrence basis. The moving insurers assert that, under the policies, Corning is obligated to defend and indemnify itself in connection with claims up to the amount of the per-occurrence deductible limit. The moving insurers further assert that they are not obligated to defend or indemnify Corning because the per-occurrence deductible has not been met (see complaint 1Í1I 76-78).
The moving insurers contend that their policies do not contain any aggregating language and, therefore, the Corhart and *898 Unibestos claims constitute multiple occurrences triggering multiple policy periods.
Corning counters that, contrary to the moving insurers’ assertions, each of the policies defined occurrence in a manner that grouped incidents.[3]
Analysis
To prevail on the motions, the moving insurers must demonstrate that the underlying Corhart-related and Unibestosrelated asbestos bodily injury claims each constitute separate occurrences triggering multiple policy periods as a matter of law.

Appalachian Ins. Co. v General Elec. Co.

The Court of Appeals decision in Appalachian Ins. Co. v General Elec. Co. presents controlling authority on the issue of what standard should be applied in resolving whether a set of circumstances amounts to one accident or occurrence, or multiple accidents or occurrences, for purposes of resolving how much coverage is available under a third-party liability insurance policy (8 NY3d 162, 170 [2007]).
In Appalachian, a group of insurers commenced a declaratory judgment action against General Electric Company (GE), who “designed, manufactured and, in some cases, installed custom turbines that were insulated with asbestos-containing products manufactured by others” (8 NY3d at 166).
The trial court granted the insurers’ motion for summary judgment for a declaration that the insurers were not obligated to provide excess coverage for individual claims that did not exceed the per-occurrence limit in the policies and denied GE’s cross motion for a declaration that the asbestos litigation arising from GE’s turbine business was a single occurrence under each policy {id. at 169-170). The Appellate Division affirmed {id. at 170, citing 19 AD3d 198 [2005]).
Before the Court of Appeals, the primary issue was “whether, for purposes of exceeding annual ‘per occurrence’ primary insurance policy limits to access excess insurance proceeds,” the defendant could group together as a single occurrence numerous personal injury claims arising from the exposure of individuals to asbestos in GE turbines at work sites across the country {id. at 166). The question was one of “contract interpretation: *899 how the term ‘occurrence’ in the . . . policies should be interpreted in the asbestos exposure context” {id. at 169). The Court of Appeals explained that “rights and liabilities of the excess insurers turn[ed] on the meaning of the term ‘occurrence’ ” in the . . . policies” {id. at 170).
After concluding that the definition of occurrence did not express an intent to group claims, the Court of Appeals “ conclude [d] that the unfortunate-event standard govern [ed] the outcome of [the] appeal” {id. at 173). Applying the unfortunate event test, the Court of Appeals ultimately concluded “that, under the terms of the . . . policies, the claims present multiple occurrences” {id. at 166).
In determining whether the asbestos exposure claims represent one occurrence or multiple occurrences, Appalachian instructs courts to first construe the definition of “occurrence” in the relevant policy or policies and, next, to apply the unfortunate event test or some other standard prescribed by parties in the policy {see id. at 172-173).
Courts must start by looking to the definition of occurrence for suggestions of an intent to group claims {Appalachian, 8 NY3d at 173; see International Flavors & Fragrances, Inc. v Royal Ins. Co. of Am., 46 AD3d 224, 228 [1st Dept 2007] [“analysis begins with the policy language”]; ExxonMobil Corp. v Certain Underwriters at Lloyd’s, London, 15 Misc 3d 1144[A], 2007 NY Slip Op 51138[U], =7 [Sup Ct, NY County 2007] [“before a court applies the ‘unfortunate event’ standard, it must examine the specific definition of ‘occurrence’ that a policy employs to determine whether it contains any provisions that would support grouping multiple claims into a single occurrence”], affd 50 AD3d 434 [1st Dept 2008]). Sophisticated parties may choose “to define occurrence in a manner that grouped incidents based on the approaches rejected in Johnson (such as the sole-proximate-cause model or the single-occurrence-per-claimant model) or adopt[ ] yet another approach not envisioned by the Johnson court” (Appalachian, 8 NY3d at 173).[4] “In the absence of a specific aggregation-of-claims provision precisely identifying the operative incident or occasion giv *900 ing rise to liability,” the unfortunate event applies (see Exxon-Mobil Corp. v Certain Underwriters at Lloyd’s, London, 50 AD3d 434, 435 [2008]).
“The best evidence of what parties to a written agreement intend is what they say in their writing” (Slamow v Del Col, 79 NY2d 1016, 1018 [1992]). “[U]nless it is ambiguous, construction of a contract is a matter of law for the courts” (International Flavors, 46 AD3d at 233). “A contract is unambiguous if the language it uses has ‘a definite and precise meaning, unattended by danger of misconception in the purport of the [agreement] itself, and concerning which there is no reasonable basis for a difference of opinion’ ” (Greenfield v Philles Records, 98 NY2d 562, 569 [2002] [brackets in original], quoting Breed v Insurance Co. of N. Am., 46 NY2d 351, 355 [1978]).
“As with any contract, unambiguous provisions of an insurance contract must be given their plain and ordinary meaning, and the interpretation of such provisions is a question of law for the court” (White v Continental Cas. Co., 9 NY3d 264, 267 [2007] [citation omitted]). “If the terms of a policy are ambiguous, however, any ambiguity must be construed in favor of the insured and against the insurer” (id.).
The Definition of Occurrence
Appalachian and International Flavors illustrate clear examples of an occurrence definition demonstrating the parties’ intent not to group claims.
The policies at issue in Appalachian defined “an occurrence as ‘an accident, event, happening or continuous or repeated exposure to conditions which unintentionally results in injury or damage during the policy period’ ” (8 NY3d at 168). The Court of Appeals found “nothing in the definition of occurrence in the . . . policies that suggested] that [the parties] had any . . . intent” to group claims under the policies’ definition of occurrence (id. at 173).
In International Flavors, the policies similarly defined “an occurrence” to “includ[e] continuous or repeated exposure to substantially the same general harmful conditions” (see 46 AD3d at 228 [“an occurrence” equated with “an accident”]). Like the Court of Appeals in Appalachian, the Appellate Division in International Flavors concluded that the definition of oc *901 currence did not reflect an intent to aggregate the individual claims (id. at 227). The policies contained no language defining occurrence in a manner that grouped incidents (see id. at 232).
Accordingly, policies defining occurrence as “ ‘an accident, event, happening or continuous or repeated exposure to conditions which unintentionally results in injury or damage during the policy period,’ ” or to that effect do not contain grouping language (see Appalachian, 8 NY3d at 168).
“Grouping language”
Policies that include additional language, such as “grouping language,” in either the definition of occurrence or elsewhere in the policy may group multiple claims as a single occurrence pursuant to the unfortunate event test or to the grouping language (see Bausch & Lomb Inc. v Lexington Ins. Co., 679 F Supp 2d 345, 351 [WD NY 2009]).
Corning maintains that, in contrast to the language of the policies in Appalachian and International Flavors, the policies here each contain grouping language — namely, a “continuous exposure clause.”[5]
[6]
The moving insurers’ policies contain language to the following effect: “[f]or purposes of determining the limit of the company’s liability, all bodily injury and property damage arising out of continuous or repeated exposure to substantially the same general conditions shall be considered as arising out of one occurrence” (see e.g. Lumbermens’ Statement of Material Facts 1i 15; affirmation of Ira Revich in support of Lumbermens’ motion for partial summary judgment [Revich aff], exhibits P-U; see also appendix).
Citing Appalachian and International Flavors, Lumbermens contends that
“New York law is clear that policy language to the effect that ‘all bodily injury arising out of continuous or repeated exposure to substantially the same general conditions shall be considered as arising out of one occurrence’ is not such aggregating language and does not reflect the parties’ intention to combine the same type of claims into a single occurrence” (Lumbermens’ mem of law in support of motion for partial summary judgment at 10).
*902 Lumbermens overstates New York law. Neither Appalachian nor International Flavors dealt with the language that Lumbermens purportedly quotes in its memorandum in support. To the contrary, both cases support the opposite proposition. In Appalachian, the Court of Appeals explained that “expanded definitions of occurrence that, for example, allow ‘continuous or repeated exposure to substantially the same general conditions [to] be considered as arising out of one occurrence,’ indicat[ed] an intent that certain types of similar claims be combined” (8 NY3d at 173 n 3 [citations omitted]). In International Flavors, the Appellate Division expressly identified the absence of a continuous exposure clause as a “crucial distinction[ ]” and declined to aggregate claims (46 AD3d at 230).
Corning urges that the policies on their face “clearly require the grouping of claims subject to similar conditions” (Corning Incorporated’s opposition to motions for partial summary judgment regarding the number of occurrences filed by Lumbermens Mutual Casualty Company, Mt. McKinley Insurance Company, Everest Reinsurance Company and related joinders at 21; see also Century’s mem of law in opposition to certain insurers’ motions for partial summary judgment at 12-14).[6]
Contrary to Coming’s and Century’s urging, Appalachian and its progeny do not hold that the unfortunate event test should be set aside and that claims should be grouped simply because a policy contains grouping language. Courts have analyzed the grouping language in the continuous exposure clause before determining whether the policy expresses an intent to group the claims with the underlying claims (see e.g. ExxonMobil, 2007 NY Slip Op 51138[U] at *6; Bausch & Lomb, 679 F Supp 2d at 355).
The court in ExxonMobil construed the definition of occurrence and concluded that grouping of the claims at issue was not required even though the definition of occurrence included grouping language (2007 NY Slip Op 51138[U] at *6). The policies contained a continuous exposure clause that read: “all damages arising out of such exposure to substantially the same general conditions existing at or emanating from each premise location of the Assured shall be considered as arising out of one occurrence” (id.). ExxonMobil asserted that the continuous *903 exposure clause constituted grouping language that expressly combined the claims brought into a single occurrence (Exxon-Mobil., 2007 NY Slip Op 51138[U] at *7). Notwithstanding the continuous exposure clause, the court held that “a plain reading of the definition of ‘occurrence’ in the policies reveals that there is nothing to suggest that the parties had any intent to provide for grouping of multiple claims into a single occurrence” (id.).
In affirming the trial court’s decision, the Appellate Division held that the unfortunate event test applied (ExxonMobil Corp. v Certain Underwriters at Lloyd’s, London, 50 AD3d 434, 435 [2008]). Furthermore, the Appellate Division required “a specific aggregation-of-claims provision precisely identifying the operative incident or occasion giving rise to liability” before applying a test other than the unfortunate event test (id.; see also Bausch & Lomb, 679 F Supp 2d at 350).[7]
As in ExxonMobil, the policies in Bausch & Lomb contained grouping language:
“The parties further agree that the provisions providing that ‘[a]ll such exposure to substantially the same general conditions shall be considered as arising out of one Occurrence’ and ‘[a] 11 such exposure to substantially the same general harmful conditions shall be considered as arising out of one Occurrence’ constitute ‘grouping’ provisions which serve to group as a single occurrence accidents which might otherwise be treated as multiple occurrences” (Bausch & Lomb, 679 F Supp 2d at 350).
The District Court concluded that the grouping provisions did not apply to the claims, reasoning that the “language [was] not intended to group claims” as applied to the underlying claims (id. at 354).
Faced with continuous exposure clauses, the courts in both ExxonMobil and Bausch & Lomb found that the policies did not reflect an intent to group the claims at issue (ExxonMobil, 2007 NY Slip Op 51138[U] at *9; Bausch & Lomb, 679 F Supp 2d at 355 [“the fact that a grouping provision may allow some claims *904 to be grouped does not mean that all claims may be grouped”]). Accordingly, the presence of grouping language alone does not require grouping of claims. The cases instead confirm “the need to draft a precise aggregation of claims provision and to identify ‘the operative incident or occasion giving rise to liability’ ” (International Flavors, 46 AD3d at 230).
The Cause of Loss Test
Corning contends that this court’s analysis for construing a continuous exposure clause should be informed by the Third Circuit Court of Appeals decision in Liberty Mut. Ins. Co. v Treesdale, Inc. (418 F3d 330 [3d Cir 2005]). The court in Liberty Mut. Ins. Co. applied the “cause of loss” test to resolve a coverage dispute regarding the number of occurrences.
The policies in Liberty Mut. Ins. Co., as the policies at issue here, provided, in relevant part, that “[f]or the purpose of determining the limits of the company’s liability: ... (1) all personal injury and property damage arising out of continuous or repeated exposure to substantially the same general conditions . . . shall be considered as the result of one and the same occurrence” (418 F3d at 333).
However, in Liberty Mut. Ins. Co., the controlling authority in the Third Circuit required application of a “cause of loss test” (id. at 334). Under the cause of loss test, “the court asks if there was but one proximate, uninterrupted, and continuing cause which resulted in all of the injuries and damage” (id. at 334, quoting Appalachian Ins. Co. v Liberty Mut. Ins. Co., 676 F2d 56, 61 [3d Cir 1982]).
The Third Circuit affirmed the trial court’s application of the cause of loss test and conclusion that “the asbestos claimants’ injuries stem from a common source, that is, the manufacture and sale of the asbestos-containing products” (id. at 335 [internal quotation marks and citation omitted]).
New York jurisprudence, however, disapproves of the cause of loss test (Appalachian, 8 NY3d at 172 n 2). As the Court of Appeals in Appalachian explained, “[i]f we were to focus only on discerning the common originating cause of multiple events . . . , we would not be applying the unfortunate-event test but rather the sole-proximate-cause test that we explicitly rejected in Johnson” (id.). Moreover, emphasis on the manufacture and sale of asbestos-related products as the common source fails to appreciate that before the claimant is exposed to the harmful product, “there was only the potential that some unidentified claimant *905 would someday be harmed” (id. at 173-174). Accordingly, Liberty Mut. Ins. Co.. is inapposite here (see also Metropolitan Life Ins. Co. v Aetna Cas. & Sur. Co., 255 Conn 295, 326, 765 A2d 891, 907 [2001] [“many of the other authorities . . . are also of no precedential value because they are from jurisdictions that use the ‘cause test’ in determining the number of occurrences, which both New York and Connecticut have rejected”]).
Continuous Exposure Clauses
In order to determine whether to group claims, courts must look at the grouping language in the policies (Appalachian, 8 NY3d at 173 n 3). Here, the grouping language is found in the policies’ continuous exposure clauses.
Policies containing a continuous exposure clause typically contain language providing to the effect that “all damages arising out of such exposure to substantially the same general conditions existing at or emanating from each premises . . . shall be considered as arising out of one occurrence” (ExxonMobil, 2007 NY Slip Op 51138[U] at *8; see e.g. Bausch & Lomb, 679 F Supp 2d at 354; Metropolitan Life, 255 Conn at 300-301, 765 A2d at 894-895; see generally Fina, Inc. v Travelers Indem. Co., 184 F Supp 2d 547, 551 [ND Tex 2002]). Determining whether multiple incidents may be construed to constitute one incident depends on whether the incidents arose out of “exposure to the same or substantially the same harmful conditions” (679 F Supp at 354; see Slamow, 79 NY2d at 1018 [“The best evidence of what parties to a written agreement intend is what they say in their writing”]).
Relying on Bausch & Lomb, the moving insurers contend that the Corhart claimants’ exposures to asbestos-containing spacers were separate and distinct, at different times, at different locations and for different durations and, therefore, the claims must not be grouped (see Lumbermens Mutual Casualty Company’s mem of law in further support of its motion for partial summary judgment at 18).
In Bausch & Lomb, the underlying claimants alleged bacterial or fungal infections in their eyes from using certain Bausch & Lomb contact lens solutions (679 F Supp 2d at 347). Over 2,000 claims were made against Bausch & Lomb (id. at 348). The policies contained language providing “that all accidental repeated or continuous exposure to the same or substantially the same harmful conditions shall be considered as arising out of one occurrence” (id. at 354). The District Court concluded that
*906 “[t]he alleged injuries suffered by the claimants took place in separate locations across several continents, and at different times, and involved different types of infections, including bacterial or fungal infections. As a result, it can not be said that the claimants were exposed to the same or substantially the same harmful conditions. Rather, it was each individual’s exposure to the solution, under conditions unique to each individual, that constituted the accident that caused the injury. Because these exposures were separate and distinct, they cannot be combined under the grouping provision of the . . . policies” (at 355).
The District Court in Bausch & Lomb construed the continuous exposure clause in a manner that this court respectfully declines to follow. The District Court relied on Appalachian and International Flavors, two cases which did not contain continuous exposure clauses, and focused on the phrase “continuous exposure” (679 F Supp 2d at 354) rather than the salient phrase “same harmful conditions” as numerous courts construing such a clause have done (see e.g. ExxonMobil, 2007 NY Slip Op 51138[U] at *8 [“These circumstances clearly do not constitute the ‘same general conditions’ ”]; Metropolitan Life, 255 Conn at 310, 765 A2d at 899 [same]; Fina, 184 F Supp 2d at 552 [“Here, the (District) Court finds that claimants who were exposed to asbestos at the same location, at roughly the same time, were exposed to ‘substantially the same general condition’ ”]).
As Mt. McKinley and Everest point out, “consideration of aggregation requires an analysis of the nature of the claims” (Mt. McKinley Insurance Company’s and Everest Reinsurance Company’s reply mem of law in support of its partial joinder to Lumbermens Mutual Casualty Company’s motion for partial summary judgment and in support of its own motion for partial summary judgment at 6). Indeed, one California court construing the meaning of occurrence in an asbestos-related action has expressed that “while we recognize that consistent interpretation of standardized terms in insurance contracts promotes clear understanding of future contracts, it ‘would be foolish . . . to state as a matter of law that the word “occurrence” . . . has the same meaning in all insurance contracts’ ” (London Mkt. *907 Insurers v Superior Ct., 146 Cal App 4th 648, 657, 53 Cal Rptr 3d 154, 161 [2007] [citation omitted]).[8]
In ExxonMobil, the underlying claims related to two products manufactured by ExxonMobil — a polybutylene resin used in water system piping (13 lawsuits) and a lubricant used in aircraft engines (12 lawsuits) (2007 NY Slip Op 51138[U] at *3, *9). The court concluded that claims did not arise out of the “same general conditions” as defined under the policies, reasoning that the “underlying claimants’ injuries arose from property damage at several locations, at different times, and for varying lengths of times” (id. at *8). Because each of the 13 polybutylene resin related claims occurred in different locations, the court stated that the “continuous exposure clause ha[d] doubtful application” (id. at *9). Similarly, the 12 lubricant related claims occurred “at all different places in time” (id.). The court emphasized that “the purpose of a continuous exposure clause is to combine claims that occur . . . [at] one location” (id.).[9]
Accordingly, policies containing a continuous exposure clause must be construed in conjunction with the definition of occurrence in order to determine whether the unfortunate event test should be applied (ExxonMobil, 2007 NY Slip Op 51138DJ] at *9; see also Bausch & Lomb, 679 F Supp 2d at 351-355). If after construing the continuous exposure clause, a court determines that the clause does not apply, it should apply the unfortunate event test (ExxonMobil, 2007 NY Slip Op 51138[U] at *9). However, consistent with the directive in Appalachian, if the grouping language in the continuous exposure clause applies, *908 the court should apply that clause, rather than the unfortunate event test (see Appalachian, 8 NY3d at 173).
In Fina, the policy included a continuous exposure clause providing that “[f]or the purpose of determining the limit of the [insurer’s] liability, all bodily injury and property damage arising out of continuous or repeated exposure to substantially the same general conditions shall be considered as arising out of one occurrence” (184 F Supp 2d at 551). After determining that the cause of the claimants’ injuries was exposure to asbestos, the District Court found that “claimants who were exposed to asbestos at the same location, at roughly the same time, were exposed to ‘substantially the same general condition’ ” (id. at 552, quoting Metropolitan Life, 255 Conn at 310 n 18, 765 A2d at 899 n 18). The District Court did not have enough evidence regarding each claimant’s exposure to determine the precise number of occurrences (id. at 552-553). However, the District Court found that there were at least three occurrences — one at each Fina facility (id.).
In Metropolitan Life, the policies stated that “[f]or purposes of determining the limit of the company’s liability and the retained limit, all bodily injury and property damage arising out of continuous or repeated exposure to substantially the same general conditions shall be considered as arising out of one occurrence” (255 Conn at 309, 765 A2d at 898). The Connecticut Supreme Court concluded that “the continuous exposure clause in the . . . policies serve[d] to combine claims arising from exposure to asbestos at the same place at roughly the same time into one occurrence, not to combine hundreds of thousands of exposures at different times and locations into one occurrence” (255 Conn at 305, 765 A2d at 896). Despite the continuous exposure clause, the Connecticut Supreme Court nevertheless found that there were multiple occurrences (id.).
The court in Metropolitan Life reasoned that
“the claimants’ injuries in this case arose from exposures to asbestos at several locations, at different times, and for varying lengths of time. These circumstances clearly do not constitute ‘the same general conditions . . . .’ Thus, as a plain reading of the policies shows, the continuous exposure clause does not combine hundreds of thousands of exposures to asbestos into one occurrence” (255 Conn at 310, 765 A2d at 899).
However, the Connecticut Supreme Court also presciently noted *909 that, conceivably, “claimants who had been exposed to asbestos at the same location, at roughly the same time, would have been exposed to the same general condition” (255 Conn at 310 n 18, 765 A2d at 899 n 18 [emphasis added], citing Champion Intl. Corp. v Continental Cas. Co., 546 F2d 502, 508 [2d Cir 1976, Newman, J., dissenting]).[10] Interestingly, “[n]either party had claimed that the underlying claims originating at the same plant at roughly the same time should be combined under the continuous exposure clause” (255 Conn at 324, 765 A2d at 906).
In Fina and Metropolitan Life, the courts clearly showed their approval of grouping based on location by actually doing so (Fina) or noting that it would have grouped based on location (Metropolitan Life).[11] Again, this is consistent with Appalachian, where the Court of Appeals stated that the “expanded defínition[ ] of occurrence” in Metropolitan Life “indicated] an intent that certain types of similar claims be combined” (8 NY3d at 173 n 3).
Conclusion
Based on the foregoing, the moving insurers fail to demonstrate as a matter of law that an occurrence under the policies must be construed to mean each claim constitutes a separate occurrence. A plain reading of the policies does not unequivocally give rise to this conclusion. Contrary to the moving insurers’ assertions, the presence alone of grouping language does not require the grouping of claims. Additionally, the moving insurers fail to show that the underlying claims arose out of the *910 “same general conditions” (see e.g. ExxonMobil, 2007 NY Slip Op 51138[U] at *8).
An issue of material fact exists as to whether the continuous exposure clause reflects an intent to group the claims at issue in the underlying actions. As discussed above, if the continuous exposure clause applies, it should be applied instead of the unfortunate event test. A court must exercise care in construing a continuous exposure clause in the context of the facts of its case to avoid the danger of grouping claims without a basis to do so. Accordingly, because the moving insurers fail to demonstrate that the underlying Corhart-related and Unibestosrelated asbestos bodily injury claims each constitute separate occurrences triggering multiple policy periods as a matter of law, partial summary judgment is denied.
Accordingly, it is hereby ordered that Lumbermens’ motion for partial summary judgment is denied; and it is further ordered that Mt. McKinley Insurance Company’s and Everest Reinsurance Company’s motion for partial summary judgment is denied; and it is further ordered that Allianz Insurance Company’s joinder for partial summary judgment is denied; and it is further ordered that Allstate and American Centennial’s motion for partial summary judgment is denied; and it is further ordered that Arrowood Indemnity Company’s motion for partial summary judgment is denied; and it is further ordered that Continental Casualty Company and the Continental Insurance Company’s motion for partial summary judgment is denied; and it is further ordered that Hudson Insurance Company’s motion for partial summary judgment is denied; and it is further ordered that London Market Insurers’ motion for partial summary judgment is denied; and it is further ordered that Old Republic Insurance Company’s motion for partial summary judgment is denied; and it is further ordered that North River Insurance Company’s motion for partial summary judgment is denied.
*911 Appendix to Decision and Order
INSURER POLICY NUMBER RELEVANT POLICY LANGUAGE
Lumbermens 2ZL 576200 “OCCURRENCE
“[A]n accident, including continuous
3ZL 576200 or repeated exposure to conditions which results in bodily injury or
4ZL 576200 property damage neither expected nor intended from the standpoint of the
5ZL 675200 insured . . .
“LIMIT OF LIABILITY
6ZL 576200 “For purposes of determining the limit of the company’s liability, all bodily
7ZL 576200 injury and property damage arising out of continuous or repeated exposure to
0YL 576200 substantially the same general conditions shall be considered as
1YL 576200 arising out of one occurrence” (Lumbermens’ Statement of Material
2YL 576200 Facts 1Í1T14-15; Revich aff, exhibits P-U).
3YL 576200
3YL
5762000-001
Mt. McKinley GMU 00036 “Occurrence — means: 1. with respect to Personal Injury and Property
GMX 000516 Damage, an accident, a happening, an event, or a continuous or repeated exposure to conditions which results during the policy period in Personal Injury or Property Damage neither expected nor intended from the standpoint of the Insured. All such exposure to substantially the same general conditions shall be deemed one Occurrence . . .
“For the purpose of determining the limits of Gibraltar’s liability (1) all Personal Injury and Property Damage arising out of continuous or repeated exposure to substantially the same general conditions shall be considered as arising out of one Occurrence” *912 (Statement of Material Facts-Mt. McKinley 1iti 29-30; affirmation of Fred L. Alvarez in support of Mt. McKinley’s mem of law in support of its motion for partial summary judgment [Alvarez aff], exhibits I-J).[12]
Mt. McKinley GMX 000993 “With respect PERSONAL INJURY and PROPERTY DAMAGE coverage,
PMX 00038 OCCURRENCE shall mean an accident or event including continuous or repeated exposure to conditions, which results, during the policy period in PERSONAL INJURY or PROPERTY DAMAGE neither expected nor intended from the standpoint of the INSURED. For the purpose of determining the limit of NORTHBROOK’S liability: 1. all PERSONAL and PROPERTY DAMAGE arising out of continuous or repeated exposure to substantially the same general conditions . . . shall be considered as arising out of one OCCURRENCE” (Statement of Material Facts-Mt. McKinley 1Í1Í 31-32; Alvarez aff, exhibits K-L).[13]
Mt. McKinley PMX 00110 “With respect PERSONAL INJURY and PROPERTY DAMAGE coverage,
PMX 00203 OCCURRENCE shall mean an accident or event including continuous repeated exposure to conditions, which results, during the policy period, in PERSONAL INJURY or PROPERTY DAMAGE neither expected nor intended from the standpoint of the INSURED. For the purposes of determining the limits of the Company’s liability, all personal injury and property damage arising out of continuous or repeated exposure to substantially the same general conditions shall be considered as *913 arising out of one OCCURRENCE. For the purpose of determining the limit of the Company’s liability: (a) all PERSONAL and PROPERTY DAMAGE arising out of continuous or repeated exposure to substantially the same general conditions . . . shall be considered as arising out of one OCCURRENCE” (Statement of Material Facts-Mt. McKinley 1Í1Í110, 34, 36; Alvarez aff, exhibits M-N).[14]
Allianz XUMB572218 “ ‘OCCURRENCE’ shall mean an accident or event including continuous repeated exposure to conditions, which results, during the policy period, in PERSONAL INJURY or PROPERTY DAMAGE neither expected nor intended from the standpoint of the INSURED. For the purposes of determining the limit of the Company’s liability, all personal injury and property damage arising out of continuous or repeated exposure to substantially the same general conditions shall be considered as arising out of one OCCURRENCE” (Allianz’s Statement of Material Facts f 5; Robert A. Arcovio’s affirmation in support of Allianz’s cross motion, exhibits A-B).
63 006 533 “[A]n accident, a happening, an event, or a continuous or repeated exposure to conditions which results during the policy period in Personal Injury or Property Damage neither expected nor intended from the standpoint of the Insured. All such exposure to substantially the same general conditions shall be deemed one Occurrence. Allstate Insurance Company
“For the purpose of determining the limits of Gibraltar’s liability (1) all Personal Injury and Property Damage arising out of continuous or repeated *914 exposure to substantially the same general conditions shall be considered as arising out of one Occurrence” (affirmation of Michael E. Buckley in support of Allstate’s and [American Centennial Insurance Company]’s cross motion [Buckley aff], exhibit l).[15]
Allstate Insurance Company 63 007 746 “PERSONAL INJURY and PROPERTY DAMAGE coverage, 900 090 OCCURRENCE shall mean an accident or event including continuous or repeated exposure to conditions, which results, during the policy period in PERSONAL INJURY or PROPERTY DAMAGE neither expected nor intended from the standpoint of the INSURED. For the purposes of determining the limits of NORTHBROOK’S liability, all PERSONAL INJURY and PROPERTY DAMAGES arising out of continuous or repeated exposure to substantially the same general conditions shall be considered as arising out of one OCCURRENCE. “For the purpose of determining the limit of NORTHBROOK’S liability. 1. all PERSONAL and PROPERTY DAMAGE arising out of continuous or repeated exposure to substantially the same general conditions . . . whether claim is made by one or more persons shall be considered as arising out of one OCCURRENCE” (Buckley aff, exhibits 2-4).
American Centennial CC-0014-49 CC-0014-49 and CC-0014 50 have the same occurrence language as Allstate
Insurance Company CC-0014 50 900 090 (see Buckley aff, exhibits 5-6).
Arrowood Indemnity Company ED 102041 “OCCURRENCE” shall mean an accident or event including continuous repeated exposure to conditions, which *915 results, during the policy period, in PERSONAL INJURY or PROPERTY DAMAGE neither expected nor intended from the standpoint of the INSURED. “For the purpose of determining the limit of the Company’s liability, all personal injury and property damage arising out of continuous or repeated exposure to substantially the same general conditions shall be considered as arising out of one OCCURRENCE” (Arrowood Indemnity Company’s Statement of Material Facts 1f 6; Carl J. Pemicone’s affirmation in support of Arrowood’s cross motion [Pemicone aff], exhibit C at l).[16]
Continental Casualty Company RDX 9140402 “The term ‘occurrence’ wherever used herein shall mean an accident or a happening or event or a continuous or repeated exposure to conditions which unexpectedly and unintentionally results in personal injury, property damage or advertising liability during the policy period. “All such exposure to substantially the same general conditions existing at or emanating from one premises locations shall be deemed one occurrence” (affirmation of Nicholas Zoogman in support of Coming Incorporated’s opposition to the motions for partial summary judgment regarding the number of occurrences filed by Lumbermens Mutual Casualty Company and Mt. McKinley Insurance Company and Everest Reinsurance Company and related joinders [Zoogman aff], exhibits 43-47).
Continental Insurance SRX 2153393 “ ‘Occurrence’ means an accident, including continuous or repeated
Company SRX 3193044 exposures to conditions, which results in personal injury, property damage or
SRX 1591681 advertising injury neither expected or *916 intended from the standpoint of the insured. “For the purposes of determining the limit of the company’s liability, all personal injury property damage and advertising injury arising out of continuous or repeated exposure to substantially the same general conditions shall be considered as arising out of one occurrence” (Statement of Material Facts-Continental Insurance Company 1Í1Í 44-46; Zoogman aff, exhibits 44-46).
Continental Insurance Company SRX 1591910 “[A]n accident or event including continuous repeated exposure to conditions, which results, during the policy period, in PERSONAL INJURY or PROPERTY DAMAGE neither expected nor intended from the standpoint of the INSURED. For the purposes of determining the limits of the Company’s liability, all personal injury and property damage arising out of continuous or repeated exposure to substantially the same general conditions shall be considered as arising out of one OCCURRENCE. “For the purpose of determining the limit of the Company’s liability: (a) all PERSONAL and PROPERTY DAMAGE arising out of continuous or repeated exposure to substantially the same general conditions . . . shall be considered as arising out of one OCCURRENCE” (Statement of Material Facts-Continental Insurance Company If 47; Zoogman aff, exhibit 47).
Hudson Insurance Company HN 00002 “OCCURRENCE: with respect to PERSONAL INJURY and PROPERTY HN 00003 DAMAGE coverage, OCCURRENCE shall mean an accident or event including continuous or repeated exposure to conditions which results, during the policy period, in PERSONAL INJURY or PROPERTY *917 DAMAGE neither expected nor intended from the standpoint of the INSURED.
“For the purpose of determining the limit of NORTHBROOK’S liability, all PERSONAL INJURY or PROPERTY DAMAGE arising out of continuous or repeated exposure to substantially the same general conditions shall be considered as arising out of one OCCURRENCE” (Hudson Insurance Company’s Statement of Material Facts Hit 7-10; affirmation of David M. Ross in support of Hudson Insurance Company’s cross motion, exhibits A-B).[17]
London Market Insurers 61576 “The term ‘Occurrence’ wherever used herein shall mean an accident or a 61577 happening or event or a continuous or repeated exposure to conditions which 64249 unexpectedly and unintentionally results in personal injury, property damage or advertising liability during the policy period.
“All such exposure to substantially the same general conditions existing at or emanating from one premises’ location shall be deemed one occurrence” (London Market Insurers’ Statement of Material Facts 1i1i 5, 10, 14; affirmation of Robert M. Flannery in support of London Market Insurers’ cross motion for joinder to Mt. McKinley’s and Everest’s motion for partial summary judgment [Flannery aff], exhibits C-E).[18]
London Market Insurers FUL083222 “[A]n accident, a happening, an event, or a continuous or repeated exposure to FUL083223 conditions which results during the policy period in Personal Injury or Property Damage neither expected nor *918 intended from the standpoint of the Insured. All such exposure to substantially the same general conditions shall be deemed one Occurrence. For the purpose of determining the limits of Gibraltar’s liability (1) all Personal Injury and Property Damage arising out of continuous or repeated exposure to substantially the same general conditions shall be considered as arising out of one Occurrence” (London Market Insurers’ Statement of Material Facts 1Í1Í 21, 26; Flannery aff, exhibits F-G).[19]
London Market Insurers FUL084030 “OCCURRENCE with respect to PERSONAL INJURY and PROPERTY FUL084031 DAMAGE coverage, OCCURRENCE shall mean an accident or event FUL084854 including continuous or repeated exposure to conditions, which results, FUL084855 during the policy period in PERSONAL INJURY or PROPERTY DAMAGE neither expected nor intended from the standpoint of the INSURED. For the purposes of determining the limits of NORTHBROOK’S liability, all PERSONAL INJURY and PROPERTY DAMAGES arising out of continuous or repeated exposure to substantially the same general conditions shall be considered as arising out of one OCCURRENCE.
“For the purpose of determining the limit of NORTHBROOK’S liability: 1. all PERSONAL and PROPERTY DAMAGE arising out of continuous or repeated exposure to substantially the same general conditions . . . whether the claim is made by one or more persons shall be considered as arising out of one OCCURRENCE” (London Market Insurers’ Statement of Material *919 Facts HH 31, 36, 41, 46; Flannery aff, exhibits H-K).[20]
North River XS 3542 Insurance Company JU0282 XS4410 JU0470 XS4430 JU0651 JU0652 “The term ‘occurrence’ wherever used herein shall mean an accident or a happening or event or a continuous or repeated exposure to conditions which unexpectedly and unintentionally results in personal injury, property damage or advertising liability during the policy period. All such exposure to substantially the same general conditions existing at or emanating from one premises locations shall be deemed one occurrence” (Statement of Material Facts-North River Insurance Company HH 9, 15, 21, 26, 32, 37, 42; affidavit of Jon F. O’Connor in support of North River Insurance Company’s cross motion for joinder in Mt. McKinley’s and Everest’s motion for partial summary judgment, exhibits A-F; Flannery aff, exhibit D).
Old Republic Insurance Company OZX 11647 “OCCURRENCE shall mean an accident or event including the continuous exposure to conditions, which results, during the policy period, in PERSONAL INJURY or PROPERTY DAMAGE neither expected nor intended from the standpoint of the INSURED. For the purpose of determining the limit of NORTHBROOK’S liability, all PERSONAL INJURY and PROPERTY DAMAGE arising out of continuous or repeated exposure to substantially the same general conditions shall be considered as arising out of one OCCURRENCE” (Old Republic Insurance Company’s Statement of Material Facts HH 2-5; affirmation of Timothy F. Jacobs [Jacobs aff] HH 4-7).[21]

. Allianz Insurance Company’s has joined Lumbermens’ and Mt. McKinley’s and Everest’s motions for partial summary judgment (the Allianz joinder); Allstate and American Centennial Insurance Company have joined Lumbermens’ and Mt. McKinley’s and Everest’s motions for partial summary judgment (the Allstate joinder); Arrowood Indemnity Company has joined Lumbermens’ and Mt. McKinley’s and Everest’s motions for partial summary judgment (the Arrowood joinder); Hudson Insurance Company has joined Lumbermens’ and Mt. McKinley’s and Everest’s motions for partial summary judgment (the Hudson joinder); London Market Insurers has joined Mt. McKinley’s and Everest’s motion for partial summary judgment (the London joinder); Old Republic Insurance Company has joined Mt. McKinley’s and Everest’s motion for partial summary judgment (the Old Republic joinder); and North River Insurance Company has joined Mt. McKinley’s and Everest’s motion for partial summary judgment (the North River joinder). *895 Continental Casualty Company and the Continental Insurance Company have submitted a brief on the issue of number of occurrences (the Continental joinder).
This court adopts Coming’s nomenclature for the statements of material facts in connection with the motions and joinders. Statements of material facts filed in support of the motions or joinders are referred to as “[Insurer] Statement of Material Facts.” Statements of material fact in support of Coming’s opposition to the motions and joinders are referred to as “Statement of Material Facts- [Insurer]. ”

. The differences between the policies do not vary the meaning of the relevant policy language. An appendix with the relevant language of the other moving insurers’ policies follows at the end of this decision and order.

. Corning does not go so far as to argue that all claims constitute one occurrence.

. At least three approaches have been followed by courts:
“the sole-proximate-cause approach, which focuses on whether the injuries or losses can be traced to a single, originating cause; the one-accident-per-person approach, which depends on the number of individual claimants seeking recovery; and the unfortunate-event approach, which is based not solely on the *900 cause but on the nature of the incident giving rise to damages” (Appalachian, 8 NY3d at 170-171, citing Arthur A. Johnson Corp. v Indemnity Ins. Co. of N. Am., 7 NY2d 222, 227-229 [1959]).

. Some policies include a continuous exposure clause in the definition of occurrence. Unlike other insurers, Lumbermens’ policies include a continuous exposure clause in a separate provision.

. Century advances a more extreme argument — that the claims constitute a single occurrence pursuant to the definition of occurrence in the policies.
Continental argues that the policies claims constitute either one occurrence or multiple occurrences — one occurrence for each claim.

. Corning asserts that ExxonMobil is inapposite because qualifying language based on location limits its applicability. This court recognizes that different policies will contain variations to standardized clauses in standardized policies. Although this court does not adopt the meaning of occurrence as construed in ExxonMobil, the ExxonMobil court’s reasoning behind construing the meaning of occurrence and the continuous exposure clause should not be ignored.

. Century mistakes the following quote from Appalachian for a mandate to group claims: “[i]f they intend to allow grouping of claims, they need only include language expressing that intent” (Century’s mem of law in opposition to certain insurers’ motions for partial summary judgment at 14, quoting Appalachian, 8 NY3d at 173 n 3). Instead, Appalachian holds that, at a minimum, for claims to be grouped, the relevant policy language must expressly state so (8 NY3d at 173 n 3). Accordingly, Century’s assertion that the underlying claims must be construed as one occurrence, based on Continental Cas. Co. v Employers Ins. Co. of Wausau (60 AD3d 128 [1st Dept 2008]), is incomplete and unavailing.

. The policy in ExxonMobil provided that “all damages arising out of such exposure to substantially the same general conditions existing at or emanating from each premises location of the Assured shall be considered as arising out of one occurrence” (2007 NY Slip Op 51138[U] at *8). Although the continuous exposure clause contained an additional limitation specifically referring to location, the court purported to explain “the purpose of a continuous exposure clause” (id. at *9 [emphasis added]). The court therefore appears to suggest that continuous exposure clauses focus on one location in general and not just in that case.

. The Connecticut Supreme Court reiterated later in its decision: “[a]s we have explained, the continuous exposure clause acts to combine claims originating at the same plant at approximately the same time into one occurrence, thus covering most mass tort claims” (255 Conn at 329, 765 A2d at 909 [emphasis added]).
Later, the Connecticut Supreme Court again provided an example of mass tort claims that would be treated as a single occurrence: “ ‘if co-workers at a plant are minimally exposed to radiation during a period of time, the “continuous exposure” clause likely [would] combine the claims into a single occurrence’ ” (255 Conn at 324 n 22, 765 A2d at 906 n 22).

. Notably, although neither case contained a location limitation in the continuous exposure clause, both cases directly or indirectly rely on the dissenting opinion in Champion Intl. Corp. (546 F2d at 507-508). The reliance is notable because the continuous exposure clause in Champion Inti. Corp. contained an express limitation based on location (id. at 508). The policy at issue defined “occurrence” as an event or a continuous or repeated exposure to conditions, specifically provides that “exposure to substantially the same general conditions existing at or emanating from each premises location shall be deemed to be one occurrence” (id. [emphasis added]).

. Policy numbers GMU 00036 and GMX 000516 were issued by Gibraltar Casualty Company (Gibraltar) (Alvarez aff Iff 14-15).

. Policy number GMX 000993 was issued by Gibraltar (Alvarez aff f 16). PMX 00038 was issued by Prudential Reinsurance Company (Pru Re) (Alvarez aff f 17).

. Policy numbers PMX 00110 and PMX 00203 were issued by Pru Re (Alvarez aff Hit 18-19).

. Policy number 63 006 533 follows form to underlying Gibraltar policy GMU 00036 (Buckley aff K 4).

. Policy number ED 102041 follows form to a First State Underwriters Agency of New England Reinsurance Corporation umbrella liability policy (Pernicone aff H 6).

. Policy numbers HN 00002 and HN 00003 follow form to a Northbrook Excess and Surplus Insurance Company policy (Hudson Insurance Company’s Statement of Material Facts H 7).

. Polity numbers 61576, 61577 and 64249 were issued by other insurance companies and subscribed by London Market Insurers (Flannery aff Hit 7-9).

. Policy numbers FUL083222 and FUL083223 were issued by other insurance companies and subscribed by London Market Insurers (Flannery aff 111110-11).

. Policy numbers FUL084030, FUL084031, FUL084854 and FUL084855 were issued by other insurance companies and subscribed by London Market Insurers (Flannery aff HH 12-15).

. Old Republic Insurance Company issued OZX 11647, which follows form to a Northbrook Excess and Surplus Insurance Company policy (Jacobs aff HH 4-5).