■ MT. MCKINLEY INSURANCE COMPANY, Formerly Known as GIBRALTAR CASUALTY COMPANY, et al., Appellants, v CORNING INCORPORATED et al., Respondents, and KEMPER INSURANCE COMPANY et al., Appellants, et al., Defendants. [946 NYS2d 136]—

Order, Supreme Court, New York County (Eileen Bransten, J.), entered June 15, 2010, which denied the motions by plaintiffs and certain defendant insurers for partial summary judgment declaring that each of the asbestos-related claims at issue constituted a separate occurrence under the applicable insurance policies, unanimously affirmed, with costs.

The insurers that are parties to this action provided primary, excess and umbrella comprehensive general liability coverage to defendant Corning Incorporated during the period from 1962 through 1985. At issue in this declaratory judgment action are the coverage obligations of the insurers to cover Corning for claims against it arising from the distribution and/or manufacture of two asbestos-containing products by Corning subsidiaries or divisions. One product was a paper-like spacer material sometimes distributed (but not manufactured) by Corhart (originally 50% owned by Corning, later a Corning division) with Corhart's refractory bricks and mortar, which were used in the construction of open-hearth steel mills. The other product was Unibestos, an asbestos-containing piping insulation manufactured by Pittsburgh Corning Corporation, an entity that was 50% owned by Corning. Before the completion of discovery, all but two of the insurers moved for partial summary judgment declaring that each of the many thousands of subject claims constitutes a separate "occurrence" under the subject policy and is therefore individually subject to a deductible before the moving insurers' coverage is implicated. Corning and the two nonmoving insurers opposed the motion. Supreme Court denied the motion (28 Misc 3d 893 [2010]), and we affirm.

In the absence of contractual language in a policy of liability insurance resolving the issue, New York courts apply the unfortunate-event test to determine whether a set of circumstances amounts to one occurrence or multiple occurrences (*see Appalachian Ins. Co. v General Elec. Co.*, 8 NY3d 162 [2007]; *Arthur A. Johnson Corp. v Indemnity Ins. Co. of N. Am.*, 7 NY2d 222 [1959]). However, parties are free "to define occurrence in a manner that group[s] incidents based on [other] approaches" (*Appalachian*, 8 NY3d at 173). Each of the policies at issue here contains similar language addressing the definition of what constitutes a single "occurrence" for purposes of bodily injury resulting from "exposure" to "conditions." The following provision is representative: "For purposes of determining the limit of the company's liability, all bodily injury and property damage arising out of continuous or repeated exposure to substantially the same general conditions shall be considered as arising out of one occurrence."* The Court of Appeals recognized in *Appalachian* that this language is one "way[ ] that parties to an insurance contract can provide for the grouping of claims" and that such a provision "indicat[es] an intent that certain types of similar claims be combined" (*id.* at 173 n 3).

On the present record, and taking into account that discovery was not complete at the time the motions were made, Supreme Court correctly determined that the moving insurers failed to make out a prima facie case that each of the thousands of claims constitutes a separate "occurrence" under the relevant policy language as a matter of law. Courts have interpreted identical or similar grouping provisions as combining into a single occurrence exposures emanating from the same location at a substantially similar time (*see Ramirez v Allstate Ins. Co.*, 26 AD3d 266 [2006]; *see also Fina, Inc. v Travelers Indem. Co.*, 184 F Supp 2d 547, 551 [ND Tex 2002]; *Metropolitan Life Ins. Co. v Aetna Cas. & Sur. Co.*, 255 Conn 295, 308-309, 765 A2d 891, 898 [2001]). Thus, while all of the thousands of claims apparently cannot be said to have arisen from a single occurrence, any group of claims arising from exposure to an asbestos condition at a common location, at approximately the same time (for example, at the same steel mill or factory), may be found to have arisen from the same occurrence (*cf. Bausch & Lomb Inc. v Lexington Ins. Co.*, 414 Fed Appx 366, 369 [2d Cir 2011] [holding that a grouping provision using substantially similar language did not apply to claims arising from consumer use of a defective product, which claims "involve(d) differing times, loca-

---

* The relevant provisions of the subject policies are set forth as an appendix to the decision and order appealed from (28 Misc 3d at 911-919).

tions, and circumstances"]). A more fully developed evidentiary record is required before the number of "occurrences" into which the underlying claims can be grouped may be determined. The parties may also pursue discovery concerning the intended meaning of the relevant policy language and the insurers' underwriting guidelines and procedures insofar as there is any ambiguity concerning the application of the grouping provision to the circumstances of the underlying claims.

Distinguishable are cases in which the policy or policies, although including "exposure" to "conditions" in the definition of "occurrence," did not contain the aggregating language "shall be considered as arising out of one occurrence" (*see Appalachian*, 8 NY3d at 173 n 3 [while a provision "allow(ing) 'continuous or repeated exposure to substantially the same general conditions (to) *be considered as arising out of one occurrence*' . . . indicat(es) an intent that certain types of similar claims be combined," the default unfortunate-event test was applied because "(t)here (was) no such language in the (subject) policies" (emphasis added)]; *International Flavors & Fragrances, Inc. v Royal Ins. Co. of Am.*, 46 AD3d 224, 229-231 [2007] [in finding that the subject policies did not aggregate claims arising from exposure to a toxin at one plant, this Court distinguished *Ramirez v Allstate Ins. Co.* (26 AD3d 266 [2006], *supra*) as involving policies that contained grouping provisions similar to those at issue here]). Even further afield from this case is *In re Prudential Lines Inc.* (158 F3d 65 [2d Cir 1998]), in which the subject policies did not even define the term "occurrence" (*id.* at 76). The *Prudential* court also expressly noted that its decision "may have limited application" to cases involving policies that contain grouping provisions such as those at issue here (*id.* at 82 n 9).

Also inapposite is this Court's decision in *ExxonMobil Corp. v Certain Underwriters at Lloyd's, London* (50 AD3d 434 [2008], *lv denied* 11 NY3d 710 [2008]), which involved claims arising from the use of two allegedly defective industrial products manufactured by the policyholder. Although the *ExxonMobil* policies did contain a grouping provision, that provision differed significantly from those at issue here. The *ExxonMobil* policies provided that "all damages arising out of . . . exposure to substantially the same general conditions *existing at or emanating from each premises location of the Assured* shall be considered as arising out of one occurrence" (*id.* at 434 [emphasis added]). Thus, the *ExxonMobil* provision aggregated only claims arising from exposure to a condition *at the policyholder's premises*. Claims arising from exposure to a condition

at a location where the policyholder was not conducting operations, such as the premises of a customer of the policyholder, were not grouped into one occurrence by this provision. Since it appears that the claims at issue in *ExxonMobil* arose from exposure created by the use of the product by the policyholder's customers (*see id.* at 435), the grouping provision did not apply. Concur—Andrias, J.P., Friedman, Catterson, Renwick and DeGrasse, JJ.